[No. B076825. Second Dist., Div. Four. Apr. 21, 1995.]

THE PEOPLE, Plaintiff and Respondent, v.
WARREN LEMAR GREEN II, Defendant and Appellant.

170

**Counsel**

Jennifer Mack, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Carol Wendelin Pollack, Assistant Attorney General, William T. Harter and Paul M. Roadarmel, Jr., Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

HASTINGS, J.—Warren Lemar Green II, also known as Warren Lee Green, appeals from a judgment entered following a jury trial in which he was convicted of unlawful driving of a vehicle (Veh. Code, § 10851, subd. (a), hereafter section 10851(a)) and a court trial in which it was found that he had suffered six prior felony convictions for which he served separate prison terms. He was found not guilty of receiving stolen property, the vehicle. He was sentenced to prison for a total term of nine years, comprised of the three-year upper term on his conviction, plus six consecutive one-year terms for his prior prison term enhancements. He was also ordered to pay a $200 restitution fine. We conclude that appellant's conviction for violation of section 10851(a) must be set aside and the matter remanded to the trial court for a new trial.

ISSUES PRESENTED

This case presents us with a renewed opportunity to address the confusion that exists in distinguishing the crimes of unlawful driving of a vehicle (section 10851(a)) and joyriding (Pen. Code, § 499b, hereafter section 499b). The potential for confusion was noted in *People* v. *Barrick* (1982) 33 Cal.3d 115, 134 [187 Cal.Rptr. 716, 654 P.2d 1243]: "The Legislature has enacted three statutes dealing with the taking of an automobile without the owner's consent: 'grand theft auto' (Pen. Code, § 487, subd. 3);[1] 'driving or taking a vehicle' (Veh. Code, § 10851); and 'joyriding' (Pen. Code § 499b). As we have observed in *People* v. *Thomas* [1962] 58 Cal.2d 121, 125-126 [23 Cal.Rptr. 161, 373 P.2d 97]: 'the physical conduct prohibited by the three enactments is substantially the same, but . . . there purports to be a distinction as to the intent with which the act is done in each instance. It may be presumed that the Legislature intended by these sections to deal with problems which are properly distinguishable. . . . *The distinction . . . is admittedly a subtle one, and would present a rather difficult problem if it were required that a court instruct a jury as to the distinction in a given situation.*' " (Italics added.)

The recent case of *People* v. *Frye* (1994) 28 Cal.App.4th 1080 [34 Cal.Rptr.2d 180] also discusses the potential confusion between these two

---

[1]This statute is not involved in this case. In 1993, the Legislature repealed that portion of Penal Code section 487 dealing with grand theft auto.

statutes and questions the analysis of this issue set forth in *People* v. *Thomas, supra*, 58 Cal.2d 121, and *People* v. *Barrick, supra*, 33 Cal.3d 115. (28 Cal.App.4th at pp. 1086-1090.) However, we are bound to follow the precedents of the California Supreme Court (*Auto Equity Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937]).

Appellant urges error in the failure of the trial court to instruct sua sponte on the lesser offense of joyriding. He also contends that there is insufficient evidence to support his conviction of violation of section 10851(a); that the trial court abused its discretion in allowing evidence of his prior convictions for auto theft; and, lastly, that the $200 restitution fine is invalid because the trial court made no finding on his ability to pay. We hold that the jury was inadequately instructed on the issues essential to an understanding of the case and find that appellant did suffer prejudice. We therefore reverse and remand the case to the trial court for further proceedings.[2]

FACTUAL AND PROCEDURAL STATEMENT

Viewed in accordance with the usual rules on appeal,[3] the evidence established that Esteban Olalde owned a white 1977 Chevrolet Caprice. On the night of August 2, 1992, Olalde was in the car waiting for a friend when two Spanish-speaking males approached, entered the vehicle, and ordered Olalde to drive. After driving a few blocks, they ordered Olalde out of the vehicle and drove away. Olalde reported his vehicle stolen.

On August 6, 1992, around 4:15 a.m., Los Angeles Police Officers Michael Flynn and Mike Richardson observed a Chevrolet Caprice exit Tam's Burgers at the corner of 51st Street and Central Avenue. The car attracted Flynn's attention because it had a cracked front windshield, a Vehicle Code violation. Richardson ran a computer check on the license and learned that the vehicle had been taken in a robbery a few days before and that the occupants should be considered armed and dangerous.

The officers followed the car as it turned northbound onto Central Avenue and proceeded half a block before turning into the parking lot of the East West Motel, immediately adjacent to the Tam's Burgers parking lot. The officers detained appellant, the only occupant of the car. When Flynn looked inside, he noted the car, which was still running, had a cracked steering column, and there was no key in the ignition. The officers found no car keys

---

[2]Because we reverse and remand, we do not reach the issue of the fine. However, we will address certain elements of the admissibility of the prior offenses for further guidance to the trial court.

[3]*People* v. *Ochoa* (1993) 6 Cal.4th 1199, 1206 [26 Cal.Rptr.2d 23, 864 P.2d 103].

in appellant's possession or in the car. A Stanley eight-inch flat-nose screwdriver lay on the front seat. Officer Flynn testified at trial that a common method of starting a car when stealing it is to crack the housing on the steering column and push the ignition lever with the screwdriver, bypassing the ignition.

At trial, Olalde testified appellant was not one of the men who had taken the car from him. He had not seen appellant before trial and had not given him permission to drive his car. Olalde testified the ignition switch had not been broken at the time his car was taken from him.

Appellant, in propria persona, presented a defense based on his claim that he had "hot-wired" and driven the car at the behest of a person named Michael Johnson who, appellant believed, owned the car. He testified that on August 5, 1992, he paid Johnson to drive him to pick up his general relief check, and at that time Johnson had keys to the car. He had also seen Johnson driving the car two or three days before August 5. On the way to pick up the check, Johnson gave appellant's friend, Eric Pullins, a ride home from the liquor store.

With regard to the incident when he was stopped by police, appellant testified that around 3 a.m. on August 6, 1992, he saw Johnson at Tam's Burgers. Johnson told him he had mislaid his car keys and paid appellant $3 to open the car. After appellant opened the car, Johnson could not find the keys inside; he then paid appellant $6 to "hot-wire" the car. Johnson left Tam's Burgers to walk to his room at the East West Motel, telling appellant to drive the car there once he got it running. After starting the car, appellant drove across the parking lot to an exit. As he made a left turn, he pulled in front of an approaching black and white police car. He then drove the car into the parking lot of the motel. Johnson was standing on the second-floor balcony. When he was detained, appellant tried to point out Johnson to the police, but they ignored him. Appellant admitted to the officers that he had previously served time for driving a stolen car, but told the officers he had no idea the car Johnson had been driving was stolen.

Appellant was impeached with evidence of six prior convictions, four of them for the unlawful driving or taking of a vehicle.

Pullins also testified he had seen Johnson driving the car in the neighborhood for a couple days and, confirmed that on August 5, 1992, he was given a ride and saw Johnson with the car keys. He believed Johnson owned the car. Deaino Waller and Carrie White each testified they had seen Johnson driving a white car on August 4 or August 5, back and forth to the Tam's Burgers parking lot.

Officer Richardson was recalled to the stand on rebuttal to testify to the statement given to him by appellant just after appellant's arrest. He testified that appellant told him appellant had been driving around in the car all day with a Black male whose name he did not know. The Black male had been buying him "dope" and liquor all day and at some point in time during the day the Black male left the keys in the car after locking it. Appellant indicated that he pried open the door to the car with a coat hanger, cracked open the steering column and started the car with a screwdriver. He drove the car over to 50th and Central because the Black male had asked him to buy him $10 worth of cocaine.

Additional facts are included in the discussion.

## DISCUSSION

1. *The instructions given and the court's sua sponte duty*

A. *Sections 10851(a) and 499b*

Section 10851(a) provides: "(a) Any person who *drives or takes* a vehicle not his or her own, without the consent of the owner thereof, and with intent *either to permanently or temporarily* deprive the owner thereof of his or her title to or possession of the vehicle, *whether with or without intent to steal the vehicle*, or any person who is a party or an accessory to or an accomplice in the driving or unauthorized taking or stealing, is guilty of a public offense. . . ." (Italics added.) Violation of this section is a felony offense.

Section 499b provides: "Any person who shall, without the permission of the owner thereof, *take* any automobile, . . . *for the purpose of temporarily using or operating* the same, shall be deemed guilty of a misdemeanor. . . ." (Italics added.)[4]

As a general rule, joyriding (§ 499b) is not a necessarily included lesser offense of unlawful taking or driving a vehicle (§ 10851(a)) for the reason that the latter offense can be committed without satisfying the elements of the former offense. (*People* v. *Thomas, supra,* 58 Cal.2d at p. 128; accord, *People* v. *Barrick, supra,* 33 Cal.3d at pp. 133, 135.) On the

---

[4]*People* v. *Frye, supra,* 28 Cal.App.4th at pages 1087-1088, opined that the term "take" in section 499b and "drive" in section 10851(a) may actually be consistent terms when the perpetrator "operates" the vehicle with the requisite mental intent set out in section 499b. The opinion points out that at least two other cases have come to the opposite conclusion, *People* v. *Ivans* (1992) 2 Cal.App.4th 1654 [4 Cal.Rptr.2d 66] and *People* v. *James* (1984) 157 Cal.App.3d 381 [203 Cal.Rptr. 716]. Our discussion will be limited to the facts presented in this case. We do not believe it is necessary to resolve the dispute in this case.

other hand, joyriding becomes a necessarily included offense if it falls within the section 10851(a) offense as specifically charged in the accusatory pleading. (*People* v. *Barrick*, *supra*, 33 Cal.3d at p. 133; *People* v. *Marshall* (1957) 48 Cal.2d 394, 404-405 [309 P.2d 456].) Where the accusatory pleading charges the section 10851 offense in the conjunctive, that is, "driving and taking," it "necessarily charges that [the defendant] took the automobile 'for the purpose of temporarily using or operating the same' and thus violated section 499b." (*People* v. *Barrick*, *supra*, 33 Cal.3d at p. 135; accord, *People* v. *Ivans*, *supra*, 2 Cal.App.4th at p. 1663.)

In the two-count complaint in this action, count 1 alleged: "On and between August 5, 1992 and August 6, 1992, in the County of Los Angeles, the crime of UNLAWFUL DRIVING OR TAKING OF A VEHICLE, in violation of VEHICLE CODE SECTION 10851(a), a Felony, was committed by WARREN LEE GREEN, who did willfully and unlawfully *drive and take* a certain vehicle, to wit, 1977 Chevrolet; License [No.] 045TDM, then and there the personal property of Esteban Olalde without the consent of and with intent, either permanently or temporarily, to deprive the said owner of title to and possession of said vehicle." (Italics added.) Appellant was charged, alternatively, in count 2 with receiving stolen property (Pen. Code, § 496, subd. 1). This pleading meets the requirements to bring section 499b into the case as a necessarily included offense.

The prosecutor also tried the case on the theory that appellant had taken the car from the lot at Tam's Burgers. While appellant was not caught in the act of breaking into and hot-wiring the car, the prosecutor elicited evidence from Officer Flynn that the steering column had been broken, there were no keys in the vehicle, and a screwdriver was on the front seat. The officer then opined that this evidence was consistent with appellant stealing the vehicle.

During discussion relating to jury instructions, the following colloquy occurred: "[PROSECUTOR]: Your Honor, the reason I included 499(b) [in the proposed jury instruction packet] is that I believe there was a part of the CALJIC use notes that . . . said that 499(b) should have been given su[a] sponte when there's a Vehicle Code [section] 10851 allegation. So out of an abundance of caution, I included it in the packet. I would not be requesting it. If the court doesn't feel it appropriate . . . I would not be opposed to taking it out. And the People are only proceeding under the driving theory of 10851. . . . [¶] THE COURT: . . . it seems to me that the position of the People is that there could not have been a taking for temporary use or operation as denounced in Penal Code [section] 499(b) because there's no evidence that would show a taking. [¶] Is that your position? [¶] [PROSECUTOR]: Yes, Your Honor. [¶] THE COURT: Okay. Do the People then withdraw

16.305? [¶] [PROSECUTOR]: I ask that it be withdrawn. [¶] . . . [¶] THE COURT: [Appellant], do you want CALJIC 16.305 given? It[] defines the misdemeanor of taking a vehicle for temporary use or operation as provided for in Penal Code [section] 499(b). [¶] Prosecution's theory is that there's no evidence that would indicate that you committed any taking. And the crime referred to in Penal Code [section] 499(b) is taking a vehicle for temporary use or operation. [¶] Do you want that instruction given? [¶] [APPELLANT]: And how you mean, for you to say this to the jury? [¶] THE COURT: Yes. [¶] [APPELLANT]: Yes. [¶] THE COURT: You do want it given? [¶] [APPELLANT]: No. [¶] THE COURT: I will not give it and I will treat the case as not involving any lesser included or lesser related as in count No. I."

Thereafter, the court instructed the jury with a modified version of CALJIC No. 14.36, removing from the instruction any reference to the taking of the vehicle.[5] The prosecutor argued that appellant should be found guilty of violation of section 10851(a), if the jury found he had the requisite mental intent to permanently or temporarily deprive the owner of possession, based solely on the fact he was found driving the vehicle.

We conclude that the pleading and the evidence supported instruction on the lesser offense of joyriding.

### B. *The issue of waiver*

 Notwithstanding appellant's acquiescence in the withdrawal of CALJIC No. 16.305, he now contends that the trial court erred by failing to instruct sua sponte on the misdemeanor offense. Initially, in response to appellant's opening brief, respondent did not argue waiver or invited error but stressed that appellant's argument at the time of trial relied upon the jury believing that Michael Johnson had given him possession of the vehicle, an argument inconsistent with reliance on CALJIC No. 16.305. (Citing *People v. Geiger* (1984) 35 Cal.3d 510, 532 [199 Cal.Rptr. 45, 674 P.2d 1303, 50 A.L.R.2d 1055], for the proposition that the defendant must argue that the evidence at most shows guilt only of the related offense.) Respondent also argued that there was "no evidence that the offense was less than that

---

[5]As modified, the court gave CALJIC No. 14.36 as follows: "[Defendant is accused in [Count I of] the information, of having violated Section 10851 of the Vehicle Code, a crime.] [¶] Every person who drives a vehicle, not his own, without the consent of the owner, and with the specific intent to deprive the owner either permanently or temporarily of his or her title to, or possession of, the vehicle, whether with or without intent to steal the same, is guilty of a violation of Vehicle Code, Section 10851. [¶] In order to prove such crime, each of the following elements must be proved: [¶] 1. A person drove a vehicle belonging to another person, [¶] 2. The other person had not consented to such driving of his or her vehicle, and [¶] 3. When such person drove the vehicle [he] had the specific intent to deprive the owner either permanently or temporarily of his or her title to or possession of the vehicle."

charged." (Citing *People* v. *James, supra*, 157 Cal.App.3d at p. 387.) However, after we granted reconsideration, respondent raised the issue of waiver, which we must first address.

"In the absence of a clear tactical purpose, the courts and commentators eschew a finding of the 'invited error' that excuses a trial judge from rendering full and correct instructions on material questions of law. Witkin has stated that, when the trial court has the duty to instruct, sua sponte, on the rules of law necessarily involved in a case, erroneous instructions are reviewable 'though invited by the defendant's own neglect or mistake.' (Witkin, Cal. Criminal Procedure, § 746, pp. 719-720.) As the court forcefully stated in *People* v. *Keelin* (1955) 136 Cal.App.2d 860, 874 [289 P.2d 520, 56 A.L.R.2d 355], 'Nevertheless, error is nonetheless error and is no less operative on deliberations of the jury because the erroneous instruction may have been requested by counsel for the defense. After all, it is the life and liberty of the defendant in a case such as this that is at hazard in the trial and there is a continuing duty upon the part of the trial court to see to it that the jury are properly instructed upon all matters pertinent to their decision of the cause.' Accordingly, if defense counsel suggests or accedes to the erroneous instruction *because of neglect or mistake* we do not find 'invited error'; *only if counsel expresses a deliberate tactical purpose in suggesting, resisting, or acceding to an instruction, do we deem it to nullify the trial court's obligation to instruct in the cause.*" (*People* v. *Graham* (1969) 71 Cal.2d 303, 319 [78 Cal.Rptr. 217, 455 P.2d 153], italics added. See also *People* v. *Wickersham* (1982) 32 Cal.3d 307, 330 [185 Cal.Rptr. 436, 650 P.2d 311]; and *People* v. *Tapia* (1994) 25 Cal.App.4th 984, 1030 [30 Cal.Rptr.2d 851], citing *People* v. *Graham, supra*, )

In this case, appellant represented himself. There was no clearly articulated tactical reason enunciated by appellant for his concurrence in the withdrawal of the instruction from the jury's consideration. In fact, in light of the potential for confusion in applying the law to the facts of a given situation (*People* v. *Barrick, supra*, 33 Cal.3d at p. 133; *People* v. *Frye, supra*, 28 Cal.App.4th at pp. 1086-1090), it is highly unlikely that appellant sufficiently understood or appreciated the subtle differences between the crimes to make an intelligible argument to the jury. Under the circumstances, we cannot find waiver.

C. *Was appellant prejudiced?*

The test for prejudice in this situation is stated in *People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243], as follows: "That a 'miscarriage of justice' should be declared only when the court, 'after an examination of

the entire cause, including the evidence,' is of the 'opinion' that it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error." Application of this test is stated as follows: "But the fact that there exists at least such an equal balance of reasonable probabilities necessarily means that the court is of the opinion 'that it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error.' Thus, it appears that the tests, as variously stated, are not fundamentally different but, on the contrary, are essentially the same. Nevertheless, the test, as stated in any of the several ways, must necessarily be based upon reasonable probabilities rather than upon mere possibilities; otherwise the entire purpose of the constitutional provision[6] would be defeated." (*Id.* at p. 837; see also *People* v. *Cahill* (1993) 5 Cal.4th 478, 492 [20 Cal.Rptr.2d 582, 853 P.2d 1037].)

■ With the foregoing in mind, we have reviewed the entire cause and we conclude that there was at least an equal chance that the jury could have found appellant guilty of violating section 499b; therefore, he was prejudiced.

As indicated above, after the evidence had been presented to the jury, the prosecutor ceased to rely on any theory that appellant had "taken" the vehicle. It appears that the prosecutor, after hearing appellant's evidence, made a tactical decision to withdraw the issue of "taking" from the jury, fearing that appellant might prevail on that issue and thus set the stage for a finding on the lesser offense of joyriding. Respondent argues that withdrawal of the issue was appropriate and that, if we reverse, we are infringing upon the prosecutor's absolute right to chose what crimes to charge and prove; an argument based upon the doctrine of separation of powers. We do not agree. The prosecutor chose to plead and prove a "taking," thereby setting the stage for instruction on the lesser offense.

We believe that the decision to withdraw the issue of "taking," after having presented evidence in support of the theory, confused the jury. The court instructed the jury that it could find appellant guilty of violation of section 10851(a) by "driving" the vehicle if appellant intended to deprive the "owner" of possession, either temporarily or permanently. Once the jury had rejected appellant's theory that he had obtained the vehicle with permission, the jury was left with only circumstantial evidence to determine appellant's intent. They had to ascertain this intent knowing there was no evidence indicating appellant had been involved in the original carjacking, and they

---

[6]Article VI, section 4½ of the California Constitution, now article VI, section 13.

apparently determined appellant had not known that the vehicle had previously been stolen.[7] With the issue of "taking" removed from consideration, the jury was left insufficient information to intelligently address the issue of specific intent.

The jury requested further help from the court, stating they needed to "understand the term *specific intent* to deprive *owner*." The court responded by further expanding the term "owner," defining it as the "person who had legal title to, or lawful possession of, the vehicle." Unfortunately, this did not meet the needs of the jury under the circumstances. The evidence strongly suggested that appellant either had stolen or otherwise obtained the vehicle from someone who did not have legal title to or lawful possession of it. The jury was asking the court to explain how appellant's act could have deprived the owner of possession when that had already been accomplished by the original thieves. By inference, they wanted to know how to factor in appellant's knowledge of the status of the vehicle. For example, Officer Richardson testified on rebuttal that appellant explained at one point he had hot-wired the car, in which he and another had been driving around all day, to buy drugs for himself and the other person. The jury could have inferred that appellant thought the other person had lawful possession of the vehicle and that appellant was temporarily "taking" the vehicle from the other person to get drugs. Were the jury to so conclude, it would support a finding of guilt pursuant to section 499b.

The jury would have been in a much better position to address specific intent if the court had fully instructed it on all aspects of sections 10851(a) and 499b. The jury could then have incorporated the issue of "taking" into the formula. If the jury found that appellant was in the act of stealing the vehicle when the police observed him driving it, such a finding could have supported an inference that he intended to divest the owner of possession permanently. However, because a person can be convicted of violation of either section based upon an intent to deprive the owner of possession only temporarily, the jury needed further guidance.

■ We believe the Legislature intended that the language of section 10851(a) relating to driving is to be applied under circumstances where: (1) the person either obtains lawful possession of the vehicle and thereafter forms the specific intent to deprive the owner of possession; or, (2) obtains the vehicle under circumstances which indicate the perpetrator has knowledge, absent his or her actual taking of the vehicle, that the use or operation

---

[7] The jury found appellant was not guilty of receiving stolen property. From this, we infer that the jury concluded appellant did not know that the vehicle had been previously stolen. (*People* v. *Anderson* (1989) 210 Cal.App.3d 414, 420 [258 Cal.Rptr. 482] [knowledge is an element of receiving stolen property].)

of the vehicle is depriving the owner of possession of the vehicle. ▉ Had there been evidence appellant knew the vehicle had previously been stolen, it would have supported a finding of the second circumstance. Without this evidence, and absent a taking, the jury was left to struggle with the contradictory evidence, and the court never focused them on the critical issues necessary to a just decision.

### 2. *Substantial evidence for violation of section 10851(a)*

▉ Appellant contends there was insufficient evidence to show that he knew the car was stolen or that he possessed the requisite intent to deprive the owner of possession for conviction pursuant to section 10851. He argues that by finding him not guilty of receiving stolen property the jury "necessarily found that appellant did not know the vehicle was stolen when he drove it." We discuss this issue to the extent it relates to double jeopardy and the retrial.

▉ "The elements necessary to establish a violation of section 10851 of the Vehicle Code are the defendant's driving or taking of a vehicle belonging to another person, without the owner's consent, and with specific intent to permanently or temporarily deprive the owner of title or possession. [Citations.]" (*People* v. *Windham* (1987) 194 Cal.App.3d 1580, 1590 [240 Cal.Rptr. 378].) Accordingly, knowledge that the vehicle was stolen is not an element of the offense. Such knowledge is merely one of various alternative factors evidencing an intent to deprive the owner of title and possession. (*People* v. *Hallman* (1973) 35 Cal.App.3d 638, 641 [110 Cal.Rptr. 891].)

▉ "When a defendant challenges the sufficiency of the evidence, the test on appeal is whether there is substantial evidence to support the conclusion of the trier of fact. [Citations.] Circumstantial evidence may be sufficient to connect a defendant with the crime and to prove his guilt beyond a reasonable doubt. [Citation.]" (*People* v. *Pierce* (1979) 24 Cal.3d 199, 210 [155 Cal.Rptr. 657, 595 P.2d 91].) Moreover, " '[i]f the circumstances reasonably justify the [conviction], the opinion of the reviewing court that those circumstances might also reasonably be reconciled with the innocence of the defendant will not warrant interference with the determination. . . .' [Citations.]" (*People* v. *Roberts* (1975) 51 Cal.App.3d 125, 138 [123 Cal.Rptr. 893].)

▉ "Where recently stolen property is found in the conscious possession of a defendant who, upon being questioned by the police, gives a false explanation regarding his possession or remains silent under circumstances

indicating consciousness of guilt, an inference of guilt is permissible. The jury is empowered to determine whether or not the inference should be drawn in light of all of the evidence. [Citation.] Specific intent to deprive the owner of possession of his car may be inferred from all the facts and circumstances of the particular case. Once the unlawful taking of the vehicle has been established, possession of the recently taken vehicle by the defendant with slight corroboration through statements or conduct tending to show guilt is sufficient to sustain a conviction of Vehicle Code section 10851. [Citation.]" (*People* v. *Clifton* (1985) 171 Cal.App.3d 195, 200 [217 Cal.Rptr. 192]; accord, *People* v. *Windham, supra,* 194 Cal.App.3d at pp. 1590-1591.)

■■■■ Mindful of these principles, we conclude the record discloses ample evidence upon which the jury could have found the requisite intent to deprive the owner either temporarily or permanently of possession of the car.

Olalde, the owner, did not give appellant permission to drive the car. Accordingly, appellant drove the car without the owner's permission.[8] The jury was entitled to infer that appellant intended to deprive Olalde either permanently or temporarily of possession of his car, based on the totality of the circumstances. (*People* v. *Windham, supra,* 194 Cal.App.3d at pp. 1590-1591.) Standing alone, evidence of a tampered ignition merely reflects the method by which the vehicle was taken rather than specific intent to deprive the owner of possession of the car. (*People* v. *Barrick, supra,* 33 Cal.3d at p. 135.) Nonetheless, such evidence when coupled with other evidence may support a finding of intent to deprive the owner of possession. (*People* v. *Windham, supra,* 194 Cal.App.3d at pp. 1590-1591.) In addition to operating the car without an ignition key and by means of a screwdriver, which is a common method used by car thieves, appellant was discovered driving the car within four days after it had been stolen. (See *People* v. *Reynolds* (1957) 149 Cal.App.2d 290, 295 [308 P.2d 48].)

Moreover, the jury was entitled to infer consciousness of guilt from the fact that appellant, who admitted knowing a black and white police car was behind him, immediately turned into the parking lot of the motel which was adjacent to the parking lot of Tam's Burgers, where appellant had just exited, and the fact that appellant exited the car without turning off the engine. Additionally, appellant told Officer Richardson that a Black male had given him the car and that he was supposed to meet him on the "westside in the seventies." However, appellant refused to name the man when asked and did not give a location where the man could be found. This

---

[8]In convicting appellant of unlawful driving of a vehicle, the jury necessarily rejected appellant's defense that Johnson authorized him to drive the car.

also contradicted his testimony at trial relating to Johnson being on the balcony of the East West Motel. (See, e.g., *People* v. *Soranno* (1971) 22 Cal.App.3d 312, 315-316 [99 Cal.Rptr. 235]; *People* v. *Brown* (1969) 1 Cal.App.3d 161, 163, 165-166 [81 Cal.Rptr. 401].)

### 3. *Admission of prior convictions*

██ Appellant further contends that the trial court abused its discretion in allowing his prior convictions relating to auto theft to be admitted for impeachment. He objected that the prior convictions did not involve offenses of moral turpitude; that their admission would be more prejudicial than probative; and the cumulative effect of such admission deprived him of a fair trial.[9] In order to aid the court on retrial, we address this issue.

██ "[S]ubject to the trial court's discretion under [Evidence Code] section 352 [article I, section 28, subdivision (f) of the California Constitution] authorizes the use of any felony conviction which necessarily involves moral turpitude, even if the immoral trait is one other than dishonesty[, for impeachment purposes]." (*People* v. *Castro* (1985) 38 Cal.3d 301, 306 [211 Cal.Rptr. 719, 696 P.2d 111]; see also *People* v. *Ballard* (1993) 13 Cal.App.4th 687, 691-695 [16 Cal.Rptr.2d 624].) In determining whether to admit the prior convictions, "[t]he trial court should consider four factors outlined in [*People* v.] *Beagle* [(1972) 6 Cal.3d 441 (99 Cal.Rptr. 313, 492 P.2d 1)]: (1) whether the prior conviction reflects adversely on an individual's honesty or veracity; (2) the nearness or remoteness in time of a prior conviction; (3) whether the prior conviction is for the same or substantially similar conduct to the charged offense; and (4) what the effect will be if the defendant does not testify out of fear of being prejudiced because of impeachment by prior convictions. [Citation.]" (*People* v. *Muldrow* (1988) 202 Cal.App.3d 636, 644 [248 Cal.Rptr. 891].) The first factor goes to admissibility of the prior convictions, which determination the trial court must first reach before exercising its discretion based on the remaining factors. (*People* v. *Collins* (1986) 42 Cal.3d 378, 389-390 [228 Cal.Rptr. 899, 722 P.2d 173]; *People* v. *Waldecker* (1987) 195 Cal.App.3d 1152, 1156 [241 Cal.Rptr. 650].)

██ "A trial court's exercise of discretion will not be disturbed unless it appears that the resulting injury is sufficiently grave to manifest a miscarriage of justice. [Citation.] In other words, discretion is abused only if the

---

[9]Appellant's alternative contention that the trial court should have allowed impeachment with "sanitized" descriptions of his four identical prior convictions relating to auto theft pursuant to his request is not cognizable. The record reveals appellant did not make such a request. (See *People* v. *Renteria* (1992) 6 Cal.App.4th 1076, 1078, 1082 [8 Cal.Rptr.2d 255].)

court exceeds the bounds of reason, all of the circumstances being considered. [Citation.]" (*People* v. *Stewart* (1985) 171 Cal.App.3d 59, 65 [215 Cal.Rptr. 716].)

Appellant's earliest prior conviction occurred in 1973, 20 years before this trial commenced. Despite its age, that conviction was nonetheless admissible because appellant did not subsequently lead a blameless life. (*People* v. *Muldrow*, *supra*, 202 Cal.App.3d at p. 647; *People* v. *Massey* (1987) 192 Cal.App.3d 819, 825 [237 Cal.Rptr. 734].) To the contrary, his 1973 conviction was followed by five additional convictions in the years 1978, 1985, 1987, 1988, and 1989. Accordingly, "the systematic occurrence of [appellant's] priors over a 20-year period create[d] a pattern that [was] relevant to [his] credibility." (*People* v. *Muldrow*, *supra*, 202 Cal.App.3d at p. 648.)

There is no steadfast rule regarding the precise number of prior convictions which may be admitted in a particular case. "[W]hether or not more than one prior felony should be admitted is simply one of the factors which must be weighed against the danger of prejudice. [Citation.]" (*People* v. *Dillingham* (1986) 186 Cal.App.3d 688, 695 [231 Cal.Rptr. 20].)

Prior convictions for the identical offense are not automatically excluded. "The identity or similarity of current and impeaching offenses is just one factor to be considered by the trial court in exercising its discretion." (*People* v. *Castro*, *supra*, 186 Cal.App.3d at p. 1216.) Since the admission of multiple identical prior convictions for impeachment is not precluded as a matter of law (*id.* at p. 1217), and a series of crimes may be more probative than a single crime, there was no abuse of discretion. (*People* v. *Stewart*, *supra*, 171 Cal.App.3d at pp. 65-66.)

We conclude that the prior convictions were admissible under the narrow circumstances of this case. However, upon remand, and with the issue of the lesser offense for the jury to consider, the court must reweigh whether or not the priors are more probative than prejudicial.

## DISPOSITION

The judgment is reversed and the matter remanded.

Epstein, Acting P. J., and Vogel (C. S.), J., concurred.