Filed 5/13/14  P. v. Nyquist CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JAMES LEONARD NYQUIST,<br><br>    Defendant and Appellant. | B248875<br><br>(Los Angeles County<br>Super. Ct. No. GA086479) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Teri Schwartz, Judge.  Affirmed.

Maria Leftwich, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Margaret E. Maxwell and Corey J. Robins, Deputy Attorneys General, for Plaintiff and Respondent.

\* \* \* \* \* \*

Defendant James Leonard Nyquist was charged with one count of making a criminal threat (Pen. Code. § 422, subd. (a)). It was alleged the threat occurred on May 26, 2012, and was directed at defendant's neighbor Russell Reed. Defendant challenges his conviction for the lesser included offense of making an attempted criminal threat. His sole contention is that the court erred in allowing the prosecutor to ask about facts underlying his prior misdemeanor conviction for making a criminal threat. We affirm.

## FACTS AND PROCEDURE

Defendant lived in Altadena and according to him, he was a nuisance to his neighbors. By his own admission, he made constant noise and disturbed his neighbors. Defendant admitted to being an alcoholic and frankly testified that "I wouldn't want to live next to me." Deputy sheriffs regularly were dispatched to defendant's home.

On May 26, 2012, beginning about 4:00 a.m., defendant was yelling and screaming and making noise. His neighbor Russell Reed asked him to be quiet. While on his patio, defendant responded: "I'm tired of you calling the sheriffs. And the next time the sheriffs come out, I [am] going to take the gun from them and I'm going to shoot you." According to Reed, defendant said he was going to shoot and kill Reed. Reed could not see defendant when he made the statement but heard the threat and testified he was frightened by it. Reed told defendant to stop threatening him, and defendant then left his patio area and "charged towards" Reed. Reed prepared to defend himself when another neighbor John Burton interrupted and said he already called the sheriffs.

Defendant previously told Reed if Reed shot at defendant, defendant would return fire. But, this was the first time defendant threatened to kill Reed.

During cross-examination by defendant's counsel, Reed testified that he previously saw defendant playing war games with knives. Burton saw the May 26 altercation between defendant and Reed, and as noted Burton called the sheriff's department. Defendant told Burton that he threatened to use a deputy's gun to shoot Reed. About six months after the charged incident, defendant's dog bit Burton. Defendant did not try to restrain the dog and was arrested after the incident.

2

Sheriff's Deputy James Johnson was dispatched to defendant's home multiple times. On May 26, Deputy Johnson responded to Burton's call. When he arrived at defendant's residence, defendant admitted to Johnson that he threatened to shoot Reed using a gun from a deputy sheriff. Defendant told Johnson that he was angry.

Defendant admitted that he was a nuisance on May 26 and that he had "done this before and it no doubt aggravated the situation." Defendant admitted threatening to shoot but claimed the threat was not directed at anyone in particular but instead "was a way for me to release my own frustration." According to defendant he spoke to himself as an "internal monologue." But later defendant testified he threatened to shoot because he wanted the deputy sheriffs to stop coming to his home. Defendant also testified Reed threatened him and Reed and his friend were "about to beat [defendant] up."

Defendant acknowledged that a similar incident occurred in 2003.

During cross-examination, defendant was asked about the 2003 incident and whether he appeared at a woman's home "with your dog dressed partially in women's clothing with makeup on and threatened her in the following way: I'm going to get you, bitch. I'm going to kill you. Bitches come in all colors. You bitch, I can rape you and I can beat you up before the cops will ever get here. I can kill you and they can't touch me." Defendant testified that statement was not true and the victim lied. Defendant testified he pled guilty to the charge in order to get out of jail.

The crux of defendant's defense was to argue that Reed was not in sustained fear. Defense counsel argued that Reed was in sustained anger, not sustained fear. "Mr. Reed his immediate reaction to what he heard is not consistent with him being in sustained fear." "Was he in sustained fear? And he was not. He didn't act as though he was in sustained fear or even really that he was in fear. And he didn't act as though he believed that Mr. Nyquist was going to shoot him or take a gun from a police officer and shoot him." Counsel also argued that defendant's statement was not in response to Reed and was not made to anyone specifically.

3

Jurors could not reach a verdict on the criminal threat charge and the People's motion to dismiss that count was granted. Defendant was convicted of attempted criminal threat.

## DISCUSSION

On appeal, defendant challenges only the admission of his 2003 prior. He does not challenge his other conduct directed at Reed and Burton, which he did not object to in the trial court and which his counsel used strategically to argue that Reed was not in sustained fear for his safety – a necessary element of making a criminal threat. (*People v. Lipsett* (2014) 223 Cal.App.4th 1060, 1064.)

*a. Additional Background*

Defendant has five prior misdemeanor convictions including contempt of court, terrorist threats, public intoxication, and two convictions for reckless driving. The terrorist threat conviction occurred in February 2004 and the conduct underlying it occurred in 2003.

Prior to trial the prosecutor sought to admit evidence of defendant's prior conviction for making a criminal threat. The court found the evidence was inadmissible under Evidence Code section 1101, subdivision (b).

However, the court ruled the evidence was admissible to impeach defendant's credibility if he testified. The court explained: "Under [Evidence Code section] 352, I believe that the probative value on the issue of credibility is substantial. The prejudicial effect somewhat minimal since we've already had testimony of other criminal acts if one were to believe the witnesses." "[T]he jury will be instructed that it's not being used as character evidence. It's going to be used as impeachment evidence because if Mr. Nyquist should testify, the issue is credibility. [¶] [T]he prejudicial effect at this point in time, minimal [and the] probative effect is substantial."

When defense counsel pointed out the conviction was for the same charge as in this case, the court responded that jurors would not be told the charge. "In determining whether Mr. Nyquist's testimony should be credited or not, the jury can consider prior

4

acts of misconduct involving moral turpitude." The court further found it was unlikely there would be an undue consumption of time or confusion of issues. The court rejected the prosecutor's request to admit other priors.

Jurors were instructed as follows: "Evidence showing that the witness Mr. Nyquist engaged in past criminal conduct amounting to a misdemeanor may be considered by you only for the purpose of determining the believability of that witness. [¶] The fact that the witness engaged in past criminal conduct amounting to a misdemeanor, if it is established, does not necessarily destroy or impair the witness's believability. It is one of the circumstances that you may consider in weighing the testimony of that witness."

*b. Analysis*

"'[T]he admissibility of any past misconduct for impeachment is limited at the outset by the relevance requirement of moral turpitude. Beyond this, the latitude [Evidence Code] section 352 allows for exclusion of impeachment evidence in individual cases is broad.' [Citations.] When determining whether to admit a prior conviction for impeachment purposes, the court should consider, among other factors, whether it reflects on the witness's honesty or veracity, whether it is near or remote in time, whether it is for the same or similar conduct as the charged offense, and what effect its admission would have on the defendant's decision to testify." (*People v. Clark* (2011) 52 Cal.4th 856, 931.) A misdemeanor is "a less forceful indicator of immoral character or dishonesty than is a felony." (*People v. Wheeler* (1992) 4 Cal.4th 284, 296, superseded by statute on other grounds as discussed in *People v. Duran* (2002) 97 Cal.App.4th 1448, 1459.)

Making a criminal threat is a crime of moral turpitude. (*People v. Thornton* (1992) 3 Cal.App.4th 419, 424.) Thus, it was admissible subject to Evidence Code section 352 under which the court should exclude evidence if its probative value is outweighed by a substantial danger of undue prejudice. (*People v. Riccardi* (2012) 54 Cal.4th 758, 808-809.) We will not disturb a trial court's exercise of its discretion to admit evidence of prior convictions for purposes of impeachment "'unless it appears that

5

the resulting injury is sufficiently grave to manifest a miscarriage of justice. [Citation.]'" (*People v. Green* (1995) 34 Cal.App.4th 165, 182.)

Defendant demonstrates no miscarriage of justice. "'Past criminal conduct involving moral turpitude that has some logical bearing on the veracity of a witness in a criminal proceeding is admissible to impeach . . .' a witness." (*People v. Cadogan* (2009) 173 Cal.App.4th 1502, 1514.) Although the conduct underlying the prior conviction occurred in 2003, defendant did not lead a legally blameless life since his conviction. He was convicted of reckless driving and public intoxication, and he routinely created nuisances in his neighborhood requiring intervention by deputy sheriffs. Thus, the fact that his prior criminal threat occurred in 2003, it is not so remote to be meaningless. (*People v. Green, supra*, 34 Cal.App.4th at p. 183.) The fact that the prior involved the same charge is a factor, but it is not dispositive. (*People v. Clark, supra*, 52 Cal.4th at p. 932.) Jurors were not told of the charge, and the admission of the prior conviction did not affect defendant's decision to testify. Additionally, the court exercised its discretion to exclude defendant's other priors. Considering all of the circumstances, defendant has not shown the court abused its discretion.

Assuming the court should have excluded the prior conviction, defendant cannot show prejudice. Defendant admitted uttering the threat. The principal issue at trial was whether Reed was in sustained fear and jurors must have credited defendant's argument that Reed was not because they convicted him only of the lesser attempted criminal threats offense. (*People v. Toledo* (2001) 26 Cal.4th 221, 231 [attempted criminal threat occurs when the defendant makes a sufficient threat to place a reasonable person in fear but does not cause the threatened person to be in sustained fear].) Defendant's argument that, absent the prior conviction, jurors would have been more likely to believe that defendant did not direct his threat at anyone in particular but uttered it as a way to release his frustration is not persuasive because not only did Reed understand the threat as directed toward him but defendant told Burton he would shoot Reed and told deputy Johnson he would shoot or kill his neighbor as he pointed to Reed. In light of

6

defendant's repeated admissions prior to trial, it is unlikely jurors would have credited his explanation at trial absent the admission of his prior. Moreover, jurors were instructed that they could consider the prior only to asses defendant's credibility. Finally, if jurors were inclined to convict defendant of criminal threats simply because of his prior conviction, they would have convicted him of the greater offense.

## DISPOSITION

The judgment is affirmed.


FLIER, J.

WE CONCUR:


RUBIN, ACTING P. J.


GRIMES, J.

7