Filed 5/3/23  P. v. Richardson CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>JAMES JESSE RICHARDSON,<br><br>        Defendant and Appellant. | A163653<br><br>(Contra Costa County<br>Super. Ct. No. 05-201567-5) |

Defendant was convicted of driving a vehicle without consent of the owner (Veh. Code, § 10851, subd. (a)).  On appeal, he challenges the admission of evidence at trial under Evidence Code section 1101, subdivision (b).  We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

The People charged defendant by information with driving or taking a vehicle without consent of the owner (Veh. Code, § 10851, subd. (a) ("10851(a)")) and receiving a stolen motor vehicle (Pen. Code, § 496d, subd. (a)), on February 29, 2020.  The People further alleged that defendant suffered one prior "strike" conviction for an attempted residential robbery while armed, for which defendant was sentenced in 2018.

Prior to jury selection, the People moved to introduce evidence of an uncharged prior act pursuant to Evidence Code section 1101, subdivision (b)

1

("1101(b)").[1] Specifically, the People sought to introduce evidence concerning defendant's 2014 arrest and charges for violating Vehicle Code section 10851(a) and Penal Code section 496. Over defendant's objection, the trial court ruled the evidence would be admissible as probative of intent, knowledge, lack of mistake, and the existence of a common scheme or plan. The court further found that the probative value of the evidence substantially outweighed any probability of prejudice, and that presentation of the evidence would not entail undue consumption of time.

At trial, Jevonne B.[2] testified she discovered her 2019 Jeep Cherokee missing on February 27, 2020, after she was out of town for a few days. Though she had left a set of her keys inside the car, she did not know defendant and did not give him or anyone else permission to drive her car.

Deputy Evan Cubit of the Contra Costa County Sheriff's Office testified he stopped a Jeep on February 29, 2020, after running the license plate and seeing it was listed as stolen. Defendant was the driver and sole occupant. When Cubit told him the car was reported stolen, defendant said he bought it for $2,700 two days prior from a friend named "Raul" in the city of Bay Point. Defendant did not know Raul's last name and did not have Raul's telephone number. Nor did he have a bill of sale or receipt for the car, and he could not provide any details about where the sale took place. Cubit searched the car and found a vehicle registration form showing the car was registered to Jevonne B. A car key was inside the car, and there were no signs of forced

---

[1]    All further statutory references are to the Evidence Code unless otherwise indicated.

[2]    Pursuant to the California Rules of Court, rule 8.90, governing "Privacy in Opinions," we refer to the victim by her first name and last initial only.

2

entry or ignition tampering.  Cubit found no tools associated with car theft in the car or on defendant's person.

The evidence concerning the uncharged act included the following. Officer Antoinette Lizardo of the Stockton Police Department testified that in November 2014, she noticed a parked Mercedes S550 with paper dealership plates that matched the description of a car that had been reported stolen in September 2013.  Defendant was by himself sitting in the driver's seat.  After confirming the car was stolen, Lizardo arrested defendant for driving or taking a stolen vehicle under Vehicle Code section 10851(a) and possession of a stolen vehicle under Penal Code section 496.

Officer Lazardo testified that defendant said he got the car from a friend named "Larry Williams."  Defendant claimed Larry allowed him to drive the car because he owed defendant about $1,300.  Defendant did not know where Larry lived, and when Lazardo called a phone number that defendant provided for Larry, a female answered and said the officer had the wrong number.  Lazardo searched the car and found a black backpack and $950 in cash which defendant claimed was his.  She did not find a bill of sale or any loan paperwork.  The car's key was inside the car, and there were no tools associated with car theft and no signs of tampering with the steering column or engine.

The trial court instructed the jury it could consider the evidence of the uncharged Vehicle Code section 10851 violation if the People proved defendant committed that offense by a preponderance of the evidence.  The court further instructed that if the jury found the prior offense had been proved, then the jury could, but need not, consider such evidence only for the limited purpose of deciding whether defendant acted with the intent to deprive the owner of possession or ownership for any period of time; whether

3

he knew the Jeep had been stolen when he allegedly acted; whether his actions were the result of a mistake or accident; and whether he had a plan or scheme to commit the charged offense. The court also instructed the jury to consider the similarity and dissimilarity between the uncharged act and charged offense when evaluating the evidence, and cautioned the jury against viewing the evidence of the prior offense as proof of defendant's bad character or disposition to commit crime.

Ultimately, the jury could not reach a verdict as to the Penal Code section 496d, subdivision (a), count, but it found defendant guilty of the Vehicle Code section 10851(a) offense. The trial court found the prior strike allegation true and sentenced defendant to the low term of 16 months, which was doubled pursuant to the Three Strikes Law. This appeal followed.

DISCUSSION

## A. Sections 1101(b) and 352

### i. Section 1101(b)

Defendant challenges the admissibility of the uncharged 2014 Mercedes incident under section 1101(b). He argues the evidence was not probative on the questions of intent, knowledge, lack of mistake, or common design or plan.

Character evidence is generally inadmissible to prove conduct on a specific occasion, but evidence that a defendant committed a crime, civil wrong, or other act is admissible if it tends to prove some fact material to the case, such as intent, knowledge, and absence of mistake. (§ 1101, subds. (a)–(b).) "The conduct admitted under . . . section 1101(b) need not have been prosecuted as a crime, nor is a conviction required." (*People v. Leon* (2015) 61 Cal.4th 569, 597.)

4

Case law establishes that "[e]vidence of *intent* is admissible to prove that, if the defendant committed the act alleged, he or she did so with the intent that comprises an element of the charged offense." (*People v. Ewoldt* (1994) 7 Cal.4th 380, 394, fn. 2 (*Ewoldt*).) On this score, "the uncharged misconduct must be sufficiently similar to support the inference that the defendant ' "probably harbor[ed] the same intent in each instance." ' " (*Id.* at p. 402.) "The least degree of similarity (between the uncharged act and the charged offense) is required in order to prove intent." (*Ibid.*)

We review the admission of uncharged act evidence for abuse of discretion. (*People v. Kipp* (1998) 18 Cal.4th 349, 369.) As we will explain, no abuse of discretion appears.

The elements of a Vehicle Code section 10851(a) offense are set out in the statute: "Any person who drives *or* takes a vehicle not his or her own, without the consent of the owner thereof, and with intent either to permanently or temporarily deprive the owner thereof of his or her title to or possession of the vehicle, whether with or without intent to steal the vehicle, . . . is guilty of a public offense." (Veh. Code, § 10851(a), italics added; *People v. Green* (1995) 34 Cal.App.4th 165, 180.) "[K]nowledge that the vehicle was stolen is not an element of the offense" but it is "one of various alternative factors evidencing an intent to deprive the owner of title and possession." (*Green*, at p. 180.) By pleading not guilty, defendant put every element of the offense at issue, including whether he had the requisite intent. (*People v. Catlin* (2001) 26 Cal.4th 81, 146 (*Catlin*).)

Here, the circumstances of the charged offense tended to support the inference that defendant knew he was driving the Jeep without consent of the true owner. After being stopped and told he was driving a stolen vehicle, defendant responded that he bought the Jeep—which was less than two years

old—for a mere $2,700 from a friend named "Raul" whose last name and contact information he did not know. Defendant could not describe where the purchase took place, other than stating generally it occurred in the city of Bay Point. Defendant had no receipt or documentation of a sale transaction. Instead, a vehicle registration form reflecting Jevonne B.'s name was found in the car.

Contrary to defendant's contention, the circumstances of the charged and uncharged offenses were materially similar. In each case, law enforcement found defendant either driving or sitting alone in the driver's seat of a car reported as stolen, and in each case defendant offered an uncorroborated explanation for being in the car. Similar to his vague story about "Raul" allegedly selling him the Jeep, defendant claimed a friend named "Larry Williams" loaned him the Mercedes though the police could not contact Larry with the information provided by defendant. The inference that defendant knew he lacked consent to drive the Jeep is strengthened when considered together with the similar circumstances surrounding the prior Mercedes incident. (*People v. Steele* (2002) 27 Cal.4th 1230, 1244; *Ewoldt*, *supra*, 7 Cal.4th at p. 402 [" '[T]he recurrence of a similar result . . . tends (increasingly with each instance) to negative accident or inadvertence or self-defense or good faith or other innocent mental state, and tends to establish (provisionally, at least, though not certainly) the presence of the normal, i.e., criminal, intent accompanying such an act . . . .' "].)

Defendant also suggests the prior incident was not sufficiently similar for proof of intent because he was found simply sitting in the stolen Mercedes in 2014, and there was no evidence that he either drove or "took" the car. This is meritless. It is eminently reasonable to infer that defendant did in fact drive the car given that he was sitting by himself in the driver's seat.

Moreover, defendant had told Officer Lazardo that "someone owed him money and so in return he was allowed *to drive* the vehicle," which he admitted having for two months. (Italics added.) Finally, even though there was no evidence of a taking, a violation of Vehicle Code section 10851 can be based on an act of driving *or* taking a vehicle and here, defendant was convicted solely of a driving-based violation. No basis for relief appears.

Defendant next asserts there was no evidence the Mercedes was worth more than $950 to elevate the prior act to a felony. Relying on *People v. Page* (2017) 3 Cal.5th 1175, which held a *theft-based* felony conviction under Vehicle Code section 10851(a) is eligible for reduction to a misdemeanor under the 2014 enactment of Proposition 47, defendant suggests that any conviction he might have suffered in 2014 could have been reduced to a misdemeanor. Defendant, however, fails to present any argument tethering this assertion to admissibility under section 1101(b). And notably, section 1101(b) broadly makes admissible "a crime, civil wrong, or other act," without mention of felony or misdemeanor classifications.

Concerning the portion of the trial court's instruction that allowed the jury to consider whether the prior act evidence tended to prove a "plan or scheme" to commit the charged offense, defendant contends the evidence was insufficient to show the existence of a common plan and so admitting the evidence for that purpose and giving the instruction was error. But defendant does not contend the instruction misstated the law, and as explained, the instruction properly informed the jury that the prior act evidence could be considered as probative of intent, knowledge, and lack of mistake or accident. Assuming the instruction about common scheme or plan was irrelevant or inapplicable, that is generally " ' "only a technical error which does not constitute ground for reversal." ' " (*People v. Cross* (2008) 45

7

Cal.4th 58, 67.) Here, the jury was instructed: "Some of these instructions may not apply, depending on your findings about the facts of the case." We presume the jury disregarded inapplicable instructions. (*People v. Chism* (2014) 58 Cal.4th 1266, 1299.)

In sum, the trial court did not abuse its discretion in admitting the uncharged act evidence as probative of intent, knowledge, and relatedly, lack of mistake or accident. Any perceived error in admitting or instructing on that evidence as probative of the existence of a common plan or scheme was harmless.

*ii. Section 352*

Defendant contends the uncharged act evidence was more prejudicial than probative and should have been excluded under section 352. We cannot agree.

" '[W]hen an objection to evidence is raised under . . . section 352, the trial court is required to weigh the evidence's probative value against the dangers of prejudice, confusion, and undue time consumption. Unless these dangers "substantially outweigh" probative value, the objection must be overruled. [Citation.] On appeal, the ruling is reviewed for abuse of discretion.' " (*People v. Jenkins* (2000) 22 Cal.4th 900, 1008.)

As discussed, the circumstances of the charged and uncharged offenses were materially similar such that the uncharged acts evidence was probative on the central issue regarding defendant's intent and knowledge. Defendant now argues the evidence failed to satisfy the highest degree of similarity required for evidence of uncharged misconduct to prove that the offenses were committed by the same person. (See *Ewoldt, supra*, 7 Cal.4th at p. 403 [evidence of uncharged misconduct to prove identity requires crimes that are " 'so unusual and distinctive as to be like a signature' "].) This contention is

off the mark. Identity was not disputed in this case, and the uncharged act evidence was not introduced to prove identity.

Nor are we persuaded by defendant's argument that the uncharged act—which took place six years before the charged offense—was too remote in time to remain probative. The probative value of prior acts evidence can vary depending on the remoteness of the uncharged misconduct. (See *Ewoldt, supra*, 7 Cal.4th at p. 398, fn. 3.) But " '[n]o specific time limits have been established for determining when an uncharged offense is so remote as to be inadmissible,' " and much longer time periods have been approved in other cases. (*People v. Spector* (2011) 194 Cal.App.4th 1335, 1388–1389, and cases cited.)

Defendant suggests the trial court abused its discretion under section 352 in admitting the evidence without informing the jury that the prior Vehicle Code section 10851 charge had been dismissed, or that defendant pled to possession of a gun found in the black backpack in the Mercedes, or that defendant would be impeached with the firearm-related convictions if he testified. We cannot agree. There appears no indication in the record of a defense request that the jury be informed of these matters. Indeed, defendant himself requested the exclusion of his prior convictions, including his gun-related convictions. Moreover, the record reflects that the earlier Vehicle Code section 10851 charge had been dismissed "in the interest of justice" on the same day that defendant pled to several firearm related charges alleged in the same complaint, thus the dismissal appears to have been part of the plea agreement. As the People note, providing the jury with defendant's abbreviated version of the earlier dismissal could have caused confusion by suggesting that defendant was cleared of any wrongdoing as to the prior Vehicle Code section 10851 charge.

Defendant argues there was a "high degree of confusion" because he was not seen driving the car during the prior incident and Officer Lazardo looked at his latest booking photograph to help identify him. We have already addressed and rejected defendant's point that he was not seen driving the Mercedes during the prior incident. Moreover, it is unclear why Lazardo's viewing of defendant's most recent booking photo would have caused any confusion. The officer openly testified she looked at defendant's latest booking photo to help identify defendant in court, and the photo showed the same exact person she arrested.

Defendant claims the uncharged act evidence "consumed undue time." We are unpersuaded. The in limine proceedings on the subject were not particularly protracted, and Officer Lazardo was the only witness at trial who testified concerning the uncharged act.

Defendant also argues the prior uncharged act instructions—which tracked CALCRIM No. 375—were "complicated." But defendant made no such objection below; nor did he request to simplify the instructions in any way. (*People v. Beeler* (1995) 9 Cal.4th 953, 983.)

Defendant further contends the trial court's prejudice analysis "should have also included consideration of the exclusion of [Jevonne B.'s] priors," namely a prior conviction for perjury that was about 13 years old. He argues the court's "uneven rulings added to the substantial prejudice" from the erroneous introduction of the Mercedes incident, which violated the basic purpose of a trial to determine the truth. But this specific argument does not appear to have been raised below and has been forfeited. (*People v. Black* (2007) 41 Cal.4th 799, 810.) Even now, defendant does not challenge the ruling excluding Jevonne B.'s priors, and that ruling is presumptively correct. (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.)

Finally, while we do not condone arguments raised in reply briefs, we briefly acknowledge defendant's belated contentions that: (1) "the evidence was substantially more prejudicial than probative given the recognized 'subconscious or implicit bias against racial minorities and that this bias manifests itself in the application of racial stereotypes' "; and (2) the trial court should have considered defendant's "inability to testify" (presumably, because he could be impeached with other prior convictions). These arguments were never raised below, and so they are forfeited. In any event, with regard to the implicit bias argument, as we will discuss more below, the uncharged act evidence was neither emotionally charged nor inflammatory.

In sum, the trial court did not err in admitting the uncharged act evidence under sections 1101(b) and 352.

## B. Due Process

Defendant contends the admission of the uncharged act evidence violated his rights to due process and a fair trial. He relies on *Kipp v. Davis* (9th Cir. 2020) 971 F.3d 939 (*Kipp*), which set out factors for determining whether the admission of other crimes evidence renders a trial so fundamentally unfair as to violate due process: "(1) the balance of the prosecution's case against the defendant was 'solely circumstantial'; (2) the other crimes evidence . . . was similar to the [crime] for which [the defendant] was on trial; (3) the prosecutor relied on the other crimes evidence at several points during the trial; and (4) the other crimes evidence was 'emotionally charged.' " (*Kipp*, at p. 956.) In defendant's view, the admission of other crimes evidence violated due process both because the prosecution's case was "based mostly on circumstantial evidence of [his] knowledge that the vehicle was stolen in 2014" and because the uncharged act evidence was emotionally charged.

11

We disagree. As a preliminary matter, defendant offers no "authority establishing that a state law permitting the admission of evidence of uncharged crimes violates a defendant's right to a fair trial." (*Catlin*, *supra*, 26 Cal.4th at p. 123.) In any case, the admission of evidence "results in a due process violation only if it makes the trial *fundamentally unfair*." (*People v. Partida* (2005) 37 Cal.4th 428, 439.)

Turning to the *Kipp* factors, we observe the People's case was not " 'solely circumstantial.' " (*Kipp*, *supra*, 971 F.3d at p. 956; *McKinney v. Rees* (9th Cir. 1993) 993 F.2d 1378, 1385 (*McKinney*).) There was direct evidence on two of three elements of the charged offense, i.e., that defendant drove a stolen car and did so without the consent of Jevonne B. While it remains the case that a defendant's "[m]ental state and intent are rarely susceptible of direct proof and must therefore be proven circumstantially" (*People v. Thomas* (2011) 52 Cal.4th 336, 355), this does not detract from the fact that direct evidence largely supported the prosecution's case.

Next, defendant asserts the uncharged act evidence was emotionally charged because he is an African-American male who was found in a stolen car with a "suspicious backpack" and $950 in cash. But that evidence was not highly inflammatory; indeed, it was "relatively sterile" and "not the type of evidence that 'necessarily prevents a fair trial.' " (*Jammal v. Van de Kamp* (9th Cir. 1991) 926 F.2d 918, 920–921 [concluding "[t]here's nothing illegal or immoral about carrying large sums of cash in the trunk of a car"].) Such evidence bears no resemblance to the inflammatory and emotionally charged other acts evidence introduced in *Kipp* or in *McKinney*, cases defendant relies on. (*Kipp*, *supra*, 971 F.3d at p. 958 [involving two days of testimony about the details of a murder-rape crime scene and photographs of the victim's dead body]; *McKinney*, *supra*, 993 F.2d at p. 1385 [painting defendant as a "man

12

with a knife collection, who sat in his dormitory room sharpening knives, scratching morbid inscriptions on the wall, and occasionally venturing forth in camouflage with a knife strapped to his body," which "served only to prey on the emotions of the jury"].)

In sum, admission of the uncharged act evidence did not violate defendant's rights to due process and to a fair trial.

## DISPOSITION

The judgment is affirmed.

FUJISAKI, J.

WE CONCUR:

TUCHER, P.J.

RODRÍGUEZ, J.

*People v. Richardson* (A163653)