Filed 12/11/19 (unmodified opn. attached)

**CERTIFIED FOR PUBLICATION**

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>JHYY DEMOND CHUBBUCK,<br><br>        Defendant and Appellant. | E071274<br><br>(Super.Ct.No. FVI18001366)<br><br>ORDER MODIFYING OPINION AND DENYING PETITION FOR REHEARING<br><br>[CHANGE IN JUDGMENT] |

THE COURT:

The Petition for rehearing filed by appellant on November 27, 2019 is denied. The opinion filed in this matter on November 12, 2019, is modified as follows:

1. On Page 11, in line 3 of the second full paragraph, change *People v. Van Orden* (2017) 9 Cal.App.5th 1285-1286 to *People v. Van Orden* (2017) 9 Cal.App.5th 1277, 1285-1286.

2. On Page 17, after the first full paragraph and before IV. DISPOSITION, add the following Section D:

*D. Defendant's Prison Prior Enhancement Should Be Stricken*

Following issuance of our original opinion in this appeal on November 27, 2019, defendant petitioned for rehearing, claiming that his one-year sentencing enhancement should be stricken in light of recent amendments to section 667.5, subdivision (b) embodied in Senate Bill No. 136. The amendment becomes effective January 1, 2020, and precludes the imposition of one-year sentence enhancements for a prior prison term unless the prior offense was sexually violent in nature. (§ 667.5, subd. (b).) In their answer to defendant's petition, The People concede that the prior conviction underlying defendant's sentencing enhancement would not qualify for an enhancement under the amended statute. The People further concede that it is highly unlikely the defendant's judgment will be final by the time the amended statute takes effect on January 1, 2020.

We agree that it is highly unlikely that defendant's judgment will be final by January 1, 2020, because he would have to exhaust all of his appeal rights by that date. (*See People v. Garcia* (2018) 28 Cal.App.5th 961, 973.) As such, we remand the matter to the trial court for resentencing in light of Senate Bill No. 136, after January 1, 2020.

3. On Page 17, under IV. DISPOSITION, strike the entire first sentence and replace it with: The cause is remanded to the trial court with directions to resentence defendant after January 1, 2020, in light of section 667.5, subdivision (b), as amended by Senate Bill No. 136 effective January 1, 2020. The trial court is further directed to

correctly reflect the defendant's name as "Jhyy Demond Chubbuck" in any subsequent abstract of judgment.

Except for these modifications, the opinion remains unchanged. The modifications effect a change in the judgment.

CERTIFIED FOR PUBLICATION

FIELDS
J.

We concur:

RAMIREZ
P. J.

MILLER
J.

3

Filed 11/12/19 (unmodified version)

**CERTIFIED FOR PUBLICATION**

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

|  |  |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JHYY DEMOND CHUBBUCK,<br><br>    Defendant and Appellant. | E071274<br><br>(Super.Ct.No. FVI18001366)<br><br>OPINION |

APPEAL from the Superior Court of San Bernardino County. John M. Tomberlin, Judge. Affirmed with directions.

Richard Power, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, and Steve Oetting and Daniel J. Hilton, Deputy Attorneys General, for Plaintiff and Respondent.

# I. INTRODUCTION

Defendant and appellant, Jhyy Demond Chubbuck,[1] was convicted by a jury of one count of unlawful taking or driving a vehicle. (Veh. Code, § 10851, subd. (a).) In a bifurcated proceeding, the trial court found defendant had suffered a strike prior pursuant to Penal Code sections 667, subdivisions (b) through (i) and 1170.12, subdivisions (a) through (d), as well as a prison prior pursuant to Penal Code section 667.5, subdivision (b). Defendant was sentenced to three years, doubled for the strike prior, and an additional one year for the prison prior, for a total of seven years in state prison.

On appeal, defendant contends: (1) his conviction must be overturned because the motorized equipment he allegedly drove or took does not qualify as a "vehicle" under Vehicle Code section 10851; (2) the jury's verdict finding that he "took" or "drove" a vehicle in violation of Vehicle Code section 10851 is not supported by substantial evidence; and (3) the trial court's finding that he suffered an offense qualifying as a strike under Penal Code sections 1170.12 and 667, subdivisions (b) through (i) is not supported by substantial evidence. We affirm the judgment.

---

[1] At oral argument appellate counsel informed the court that defendant's true name is "Jhyy Demond Chubbuck," as reflected in the opening brief and not "Jayy Demond Chubbuck," as reflected in the abstract of judgment. Therefore, we will direct the trial court to correct the abstract.

## II. FACTS AND PROCEDURAL HISTORY

### A. *Facts and Charges*

On May 20, 2018, police responded to a report of an unauthorized individual driving within the storage yard of a business in Hesperia. When the police arrived at the scene, they discovered defendant inside a motorized device used to move shipping containers within the storage yard. Defendant was arrested and subsequently charged in an amended information with one count of unlawful taking or driving of a vehicle in violation of Vehicle Code section 10851. The amended information further alleged that defendant had a previous conviction in the United States District Court in Tennessee which qualified as a strike warranting a sentence enhancement under Penal Code sections 1170.12 and 667, subdivisions (b) through (i).

### B. *Prosecution Evidence*

An employee testified that the storage yard of the business is a large lot used to store horse feed. He was working in the early morning of May 20, 2018, as a security guard stationed in the business's office located at the main entrance to the storage yard. At the time, all the entrances to the storage yard were locked and he was the only individual working on the premises. At approximately 3:52 a.m., he heard a noise, looked out the window and observed someone attempting to climb into one of the pieces of motorized equipment parked in the storage yard. He described the equipment as a "truck." He heard the truck's engine start and observed the truck drive around the yard for approximately 10 to 15 minutes before coming to a stop. The employee called a

coworker to report the incident. On cross-examination, the employee admitted his view of the truck was obscured during part of the 10 or 15 minutes that he claimed to observe it driving around the yard.

A manager for the business testified that the general hours employees work in the business's storage yard are between 8:00 a.m. and 4:30 p.m., with one guard stationed overnight. In the early morning of May 20, 2018, an employee called him to report an incident in the storage yard. The manager arrived at the storage yard at the same time as police officers, opened the gate to the yard for the officers, and observed the officers remove an individual from the cabin of a motorized piece of equipment in the yard. He described the equipment as a "yard goat," explained that it was a utility device used to transport shipping containers, and described it as a type of vehicle which could be used to haul shipping containers on a highway. However, this specific device was only used to move shipping containers within the business's storage yard and the business did not have a license for its use on public streets. Only the manager and one other employee had permission to drive the equipment and the manager did not give anyone else permission to drive the equipment on the date of the incident.

A deputy sheriff for the San Bernardino County Sheriff's Department testified that she was working on patrol on May 20, 2018, when she was called to respond to a report of an unauthorized individual driving a vehicle inside a storage lot. When the deputy and her partner arrived at the scene, the manager of the business unlocked the gates to let them in, and they made contact with a security guard who directed them to a white

4

vehicle parked in the storage yard. The deputy and her partner approached the vehicle, opened the driver's side door to the vehicle, discovered defendant inside, and detained defendant. She did not observe anyone exit the vehicle as they approached.

C. *Defense Evidence*

Defendant testified that he was in Hesperia on May 19, 2018, visiting his parents. He had walked to a liquor store that evening and purchased vodka and Gatorade. He met two females outside the liquor store and they began drinking, eventually making their way to a nearby club or bar. He left the bar after he ran out of money, but became disoriented while attempting to return to his parent's home. Eventually, defendant made his way through an opening in a fence and climbed into the cabin of a piece of equipment parked on the other side of the fence. Defendant described the equipment as a "semi," an "18 wheeler," and a type of vehicle used to haul trailers on roads. Defendant testified that he went to sleep once he entered the vehicle, but at some point woke up and started the ignition. However, defendant denied putting the vehicle into gear and denied driving the vehicle for 10 or 15 minutes around the lot.

D. *Bifurcated Proceedings and Sentencing*

The allegations of defendant's prior strike offense and prior prison sentence were tried in a bifurcated proceeding. The People alleged that defendant's prior conviction in the United States District Court in Tennessee for a violation of title 18 United States Code section 1951, accompanied by a firearm enhancement pursuant to title 18 United States Code section 924(c), qualified as a strike warranting a sentence enhancement

5

under Penal Code sections 1170.12 and 667, subdivisions (b) through (i). The People presented a packet of documents marked as exhibit 5 and called a special assistant to the United States Attorney to testify and explain various aspects of the documents. Exhibit 5 was described as "a certified document that contains multiple different documents," including a complaint, plea agreement, court minutes, and records from the United States penitentiary in Victorville. At the conclusion of the special assistant's testimony, exhibit 5 was admitted into evidence without objection.

Defendant did not contest the fact of his conviction, but argued that the conviction did not qualify as a strike under Penal Code section 667, subdivisions (b) through (i). The trial court found that the prior conviction qualified as a strike. Defendant was sentenced to three years, doubled for a strike prior, and an additional one year for the prison prior, for a total of seven years in state prison.

### III.  DISCUSSION

A. *The Device at Issue Here Qualified as a "Vehicle" Under Vehicle Code Section 10851*[2]

Defendant argues that his conviction under section 10851 cannot stand because the motorized equipment which he was accused of driving does not qualify as a "vehicle" for purposes of section 10851. We disagree.

---

[2] Undesignated statutory references are to the Vehicle Code.

6

1. Standard of Review and Applicable Legal Principles

"[T]he definition of 'vehicle' set forth in Vehicle Code section 670 governs the construction of Vehicle Code section 10851 and the meaning of 'vehicle.'" (*People v. Philpot* (2004) 122 Cal.App.4th 893, 901.) Section 670 defines a vehicle as "a device by which any person or property may be propelled, moved, or drawn upon a highway, excepting a device moved exclusively by human power or used exclusively upon stationary rails or tracks."

"The proper interpretation of a statute is a question of law for our independent determination. [Citations.] Likewise, the application of a statute to undisputed facts is a question of law, subject to our de novo, or independent, review on appeal." (*People v. Salcido* (2008) 166 Cal.App.4th 1303, 1311.) "In interpreting the statutory language at issue, '[w]e begin with the fundamental rule that our primary task is to determine the lawmakers' intent.' . . . [T]he key to statutory interpretation is applying the rules of statutory construction in their proper sequence." (*MacIsaac v. Waste Management Collection & Recycling, Inc.* (2005) 134 Cal.App.4th 1076, 1082.) We look first to the plain meaning of the words used in the statute; then to secondary rules of construction and legislative history; and finally to considerations regarding the impact of any practical application of a proposed interpretation. (*Id.* at pp. 1083-1084.)

2. Analysis

Defendant here argues that the type of motorized equipment involved in this case does not qualify as a "vehicle" for purposes of section 10851 because it was specially

7

designed for the purpose of moving storage bins, traveled at low speeds, and was not normally used for driving upon a highway. Both the plain meaning of the words used in section 670 and the canons of statutory construction compel us to reject this argument.

Section 670 defines a vehicle as a device by which a person or property "may" be propelled, moved or drawn upon a highway. In its plain meaning, the term "may" references permissive conduct, or conduct which is optionally exercised. In other words, whether a device is a "vehicle" turns on whether the user has the option to use the device to propel, move, or draw persons or property on a highway, referring to the device's potential physical capability instead of its intended or actual use in a specific context. Here, it was undisputed that the device at issue had the potential to be used to haul storage containers on a highway.[3] Nothing in the record suggests that this device was incapable of being driven on a highway—whether lawfully or unlawfully—if a person chose to do so. Thus, the evidence established that the device is one which "may" be used to move property on a highway, rendering it a "vehicle" under the plain meaning of the words in section 670.

Even if we were to assume the plain meaning of the words used in section 670 left some degree of ambiguity, secondary considerations compel the same conclusion. While the legislative history of section 670 is sparse,[4] two established canons of construction

---

[3] Defendant's own description of the device stated it was "a regular sized [tractor] that hooks up to a trailer that combines to make an 18 wheeler like any other one that you would see on the street. . . . [I]t was no different from any other tractor."

[4] As noted in *People v. Philpot*, *supra*, 122 Cal.App.4th at page 900.

inform our interpretation.  First, it is a canon of statutory construction "that where exceptions to a general rule are specified by statute, other exceptions are not to be implied or presumed in the absence of a clear legislative intent to the contrary."  (*People v. Guillen* (2013) 212 Cal.App.4th 992, 996.)  Here, section 670 sets forth two explicit exceptions to the definition of a vehicle—devices moved exclusively by human power and devices used exclusively on rails or tracks.  The inclusion of two statutorily enumerated exceptions strongly suggests that the Legislature did not intend to recognize other exceptions such as the ones urged by defendant here.

Second, "[w]hen the same word appears in different places within a statutory scheme, courts generally presume the Legislature intended the word to have the same meaning each time it is used."  (*People v. Gray* (2014) 58 Cal.4th 901, 906.)  We note the term "vehicle" is incorporated into the statutory definitions for a wide range of devices described in the Vehicle Code.  These include devices designed for enterprise-specific purposes (§§ 322 ["Farm labor vehicle"], 410 ["Motor truck"], 385.3 ["Logging vehicle"], 565 ["Special construction equipment"]); devices that travel at low speeds (§§ 345 ["Golf cart"], 385.5 ["Low-speed vehicle"]); and devices that are capable of, but not specifically intended for use on a highway (§§ 111 ["All-terrain vehicle"], 500 ["Recreational off-highway vehicle"], 531 ["Utility-terrain vehicle"], 557 ["Snowmobile"]).  Given such, it seems clear the Legislature did not intend to exclude devices used for an enterprise-specific purpose, devices capable of only low-speed

travel,[5] or devices which are designed primarily for use off public highways from the definition of "vehicle" and defendant's reliance on these factors is not persuasive.

B. *Substantial Evidence Supports Both Theories of Liability Under Section 10851*

Defendant also contends there was insufficient evidence to support the conviction for a violation of section 10851. Specifically, defendant argues that the evidence does not support either a "taking" or a "driving" theory of liability under that statute. We disagree.

1. Standard of Review and Applicable Legal Principles

"[S]ection 10851[, subdivision] (a) 'proscribes a wide range of conduct.' [Citation.] A person can violate section 10851[, subdivision] (a) 'either by taking a vehicle with the intent to steal it or by driving it with the intent only to temporarily deprive its owner of possession (i.e., joyriding).'" (*People v. Garza* (2005) 35 Cal.4th 866, 876.)

"'To assess the evidence's sufficiency, we review the whole record to determine whether *any* rational trier of fact could have found the essential elements of the crime . . . beyond a reasonable doubt. [Citation.] The record must disclose substantial evidence to support the verdict—i.e., evidence that is reasonable, credible, and of solid value. . . .

_____

**5** We also note that defendant's extensive argument in his reply brief focusing on the inability of the device to travel at "highway speeds" is misplaced. The Vehicle Code defines "highway" as any "way or place of whatever nature, publicly maintained and open to the use of the public for purposes of vehicular travel," including streets. (§ 360.) Defendant's apparent understanding of the term "highway" to refer to roads in which vehicles travel above certain speeds is not supported by the statutory language and his arguments premised on this erroneous foundational assumption are unpersuasive.

10

"We resolve neither credibility issues nor evidentiary conflicts. . . ." A reversal for insufficient evidence "is unwarranted unless it appears 'that upon no hypothesis whatever is there sufficient substantial evidence to support'" the jury's verdict.'" (*People v. Penunuri* (2018) 5 Cal.5th 126, 142.)

    2.  <u>Substantial Evidence Supports a Conviction Under the "Drives" Theory</u>

Defendant argues that the unlawful driving aspect of section 10851 was intended to apply to activity formerly known as joyriding, which "does not logically apply when the vehicle involved is in an enclosed area on private property from which there is no way to drive the vehicle away from the owner's possession and control."

It is true that the unlawful driving provisions of section 10851 were intended to prohibit the offense formerly known as "joyriding." (*People v. Garza*, *supra*, 35 Cal.4th at p. 876; *People v. Van Orden* (2017) 9 Cal.App.5th 1285-1286.) However, under the former statutory scheme, joyriding was defined simply as the unauthorized temporary use or operation of a vehicle. (*People v. Howard* (1997) 57 Cal.App.4th 323, 327; see also *People v. Ivans* (1992) 2 Cal.App.4th 1654, 1665.) Defendant has not cited any authority, and we have found none, which recognize exceptions where the vehicle is operated only in a confined area, only for a short amount of time, or is quickly returned. Nor do we agree that such a limitation should be read into the statute. The unauthorized

use of the vehicle risks damage to the vehicle and impairment of its lawful owner's right to possession irrespective of the length of time or location in which it is operated.[6]

Here, defendant admitted that he started the ignition to the vehicle. While defendant denied putting the vehicle into gear, an employee observed the vehicle being driven around the storage lot for 10 to 15 minutes and defendant was discovered alone inside the vehicle shortly thereafter. Since unlawful driving involves only the unauthorized use or operation of the vehicle, this was sufficient evidence to support the conviction under an unlawful driving theory.

3. Substantial Evidence Supports a Conviction Under the "Takes" Theory

Defendant also argues that the evidence is insufficient to support his conviction under a theory of unlawful taking under section 10851 because the evidence establishes the vehicle never left the business premises and was ultimately discovered in the same general area in which it was originally parked. This argument is misplaced.

The unlawful taking provisions of section 10851 are considered a form of theft. (*People v. Van Orden*, *supra*, 9 Cal.App.5th at pp. 1285-1286.) While "theft requires the specific intent to permanently deprive the owner of its property. . . . 'the property need not . . . be retained by the perpetrator.' [Citation.] 'Asportation of the property with the

---

**6** For example, where an individual engages in the unauthorized use of a vehicle within a secured parking structure and unintentionally drives the vehicle into a wall, it would seem anomalous to conclude that a charge of unlawful driving would not apply. Yet under defendant's theory, the fact that the vehicle was driven for only a short time and never left the secured premises would exempt such acts from the statutory prohibition.

intention to appropriate it is sufficient . . . even though the property may subsequently be returned to the owner. . . . The fact that a thief is prevented by an officer from getting away with the property, or that he may change his mind and return the property to escape prosecution for the crime, does not relieve him from the consequences of the theft. . . .'" (*People v. Shannon* (1998) 66 Cal.App.4th 649, 656.) Thus, the fact that the vehicle here never left the business premises of its owner and was returned to roughly the same location where it was originally parked is of no consequence. Instead, the relevant inquiry is whether there was sufficient evidence from which the jury could infer defendant's specific intent to permanently deprive the owner of the vehicle, regardless of whether defendant was ultimately successful in doing so.

Here, defendant testified that he had become disoriented after a night of drinking, had been trying to find his way home, and had been walking for hours in cold and windy conditions prior to climbing into the vehicle at issue. The employee on duty testified that all the gates to the storage yard were locked at the time he observed the vehicle being driven around within the lot. Defendant was discovered alone in the vehicle even after it had come to a stop, but denied ever driving the vehicle in circles as described by the employee. Given this evidence, a reasonable jury could infer that defendant intended to use the vehicle to drive home, but was unable to do so given the fact that all the gates to the storage yard were secured and locked.

Moreover, the jury could infer the specific intent necessary based upon the defendant's continued denial that he ever drove the vehicle. "'Where recently stolen

property is found in the conscious possession of a defendant who, upon being questioned by the police, gives a false explanation regarding his possession or remains silent under circumstances indicating consciousness of guilt, an inference of guilt is permissible. . . . [P]ossession of the recently taken vehicle by the defendant with slight corroboration through statements or conduct tending to show guilt is sufficient to sustain a conviction of Vehicle Code 10851.'" (*People v. Green* (1995) 34 Cal.App.4th 165, 180-181.) Thus, the jury was entitled to infer guilty intent from defendant's continued denial of driving the vehicle even after being found alone within the vehicle moments after it was observed being driven around the storage yard. This was sufficient evidence to support a conviction under an unlawful taking theory, since the jury was entitled to infer the defendant's motives based upon the totality of the evidence presented.[7]

4. The Precise Theory Relied Upon by the Jury Is Irrelevant

Defendant also argues that the record does not disclose which theory under section 10851 was used by the jury, requiring reversal if either theory is defective. However, "[i]f each juror concludes, based on legally applicable theories supported by substantial evidence, that the defendant is guilty of the charged offense, the defendant is properly

---

[7] Additionally, we note that under Penal Code section 490.2, the jury was also required to find that the value of the vehicle exceeded $950 in order for defendant to be convicted of a felony under Vehicle Code section 10851. (*People v. Lara* (2019) 6 Cal.5th 1128, 1133.) While the record does not disclose that the jury was ever instructed to make such a finding, defendant forfeited this issue by failing to raise this argument on appeal. Further, the record indicates the People presented uncontradicted evidence that the value of the vehicle here was $21,500. Thus, even in the absence of forfeiture, we would find that any error in the failure to instruct the jury on this issue was not prejudicial.

14

found guilty even if the jurors disagree about the particular theories or facts." (*People v. Davis* (1992) 8 Cal.App.4th 28, 34.)  Since we find that substantial evidence supports a conviction under section 10851 under both its unlawful driving and unlawful taking provisions, we need not address defendant's argument in this regard.

C. *Defendant Has Forfeited His Challenge to the Finding of a Strike Offense*

Defendant also contends substantial evidence does not support the trial court's finding he suffered an offense qualifying as a strike under Penal Code sections 1170.12 and 667, subdivisions (b) through (i).  We deem this issue forfeited for failure to provide an adequate record.

"'Perhaps the most fundamental rule of appellate law is that the judgment challenged on appeal is presumed correct . . . .'  '"We must indulge in every presumption to uphold a judgment, and it is defendant's burden on appeal to affirmatively demonstrate error it will not be presumed."'  . . . [T]he defendant further bears the burden to provide a record on appeal which affirmatively shows that there was error below, and any uncertainty in the record must be resolved against the defendant." (*People v. Sullivan* (2007) 151 Cal.App.4th 524, 549.)  Where an appellant fails to supply a record adequate for review, his claim must fail.  (*People v. Whalen* (2013) 56 Cal.4th 1, 85, disapproved on other grounds in *People v. Romero and Self* (2015) 62 Cal.4th 1, 44, fn. 17.)

"'In order for a prior conviction from another jurisdiction to qualify as a strike under the Three Strikes law, it must involve the same conduct as would qualify as a strike in California.'" (*People v. Woodell* (1998) 17 Cal.4th 448, 453.)  "The People must

prove all elements of an alleged sentence enhancement beyond a reasonable doubt." (*People v. Miles* (2008) 43 Cal.4th 1074, 1082.) However, "'the trier of fact must be permitted to go beyond the least adjudicated elements of the offense and to consider, if not precluded by the rules of evidence or other statutory limitation, evidence found within the entire record of the foreign conviction.'" (*People v. Woodell*, *supra*, at p. 453; *People v. Roberts* (2011) 195 Cal.App.4th 1106, 1116-1117.) Only where the record of conviction does not disclose facts relevant to the underlying offense does the court presume that the prior conviction was for the least offense punishable under the foreign law. (*People v. Roberts*, *supra*, at p. 1117; *People v. Miles*, *supra*, at p. 1083; *People v. Delgado* (2008) 43 Cal.4th 1059, 1067.)

Here, it was undisputed that defendant suffered a prior conviction under title 18 United States Code section1951, accompanied by a firearm enhancement pursuant to title 18 United States Code section 924(c). Defendant acknowledges that this prior conviction would qualify as a strike if the underlying facts indicated the conviction stemmed from a robbery offense under title 18 United States Code section 1951 or personal use of a firearm under title 18 United States Code section 924, but argues that the evidence does not conclusively support either finding. The record before us is inadequate to review the merits of this contention.

At the bifurcated hearing, the People presented a packet of certified documents related to defendant's prior conviction, which were marked as exhibit 5 and admitted into evidence. Exhibit 5 was described to include multiple documents, including the

pleadings, plea agreement, minute orders, and prison records related to defendant's prior conviction. The trial court was entitled to review each of these documents to determine if they disclosed the factual basis for defendant's conviction sufficient to conclude that the conviction qualified as a strike. However, defendant did not make any effort to have exhibit 5 transmitted to this court for review.[8] We cannot review the trial court's findings of fact for substantial evidence where only a portion of the evidence has been placed before us.

While it is true that courts must presume a foreign conviction was for the least punishable offense, that presumption applies where the underlying facts supporting the conviction cannot be ascertained from the record. No such presumption arises where the facts cannot be ascertained because the defendant, by his own omission, simply neglects to provide portions of the record for review. It was defendant's burden to affirmatively show error and to provide us with an adequate record to review any issues raised on appeal. Absent an adequate record, we presume the trial court's judgment was correctly decided based upon the evidence before it and we deem the issue forfeited.

## IV. DISPOSITION

The cause is remanded to the trial court with directions to correct the abstract of judgment to reflect defendant's name as "Jhyy Demond Chubbuck" and to forward a

---

[8] We note that even after the record was prepared, defendant filed a motion to augment the record to include exhibit 2, but took no effort to request that exhibit 5 be included.

copy of the amended abstract of judgment to the Department of Corrections and

Rehabilitation.  In all other respects, the judgment is affirmed.

CERTIFIED FOR PUBLICATION

FIELDS_____
J.

We concur:

RAMIREZ_____
P. J.

MILLER_____
J.