Filed 9/15/21  P. v. Tapia CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>ALISHA NICOLE TAPIA,<br><br>    Defendant and Appellant. | B305572<br><br>(Los Angeles County<br>Super. Ct. No. YA099077-03) |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Vincent H. Okamoto, Judge.  Affirmed in part, reversed in part, and remanded with directions.

Kathleen Caverly and Olivia Meme, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Wyatt Bloomfield and Michael C. Kellar, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Alisha Nicole Tapia appeals from a judgment of 35 years to life for first degree burglary, attempted first degree burglary, vandalism, and misdemeanor possession of burglary tools. On appeal, Tapia contends: (1) the conviction for attempted first degree burglary must be reversed because it was a lesser included offense of the first degree burglary conviction; (2) the trial court abused its discretion when it admitted evidence of her prior convictions; (3) the trial court abused its discretion when it failed to strike at least one of her prior convictions pursuant to *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497; (4) the admonishments given for the prior conviction allegations were deficient resulting in an involuntary admission; (5) the trial court's sentence of 35 years to life violates the California Constitution's prohibition against cruel and unusual punishment; and (6) the case should be remanded for several sentencing errors. We agree Tapia's attempted burglary conviction must be reversed. We also agree the admonition was deficient rendering the prior conviction admissions involuntary. We remand for further proceedings on the prior conviction allegations and for resentencing. We otherwise affirm the judgment.

## FACTS

On October 21, 2018, Lloyd Quiggle and Patricia Ziegler were inside their home in Manhattan Beach when they heard a loud noise. Quiggle found a stepladder propped against the scaffolding surrounding their house, which was in the process of being painted. He then heard crashing glass and ran towards the sound. He yelled to Ziegler that someone was on the scaffolding. At the front of the house, he saw Tapia climbing down the scaffolding, wearing white painter's overalls and a ventilator mask with "a small crowbar in her pocket." He

2

demanded to know what she was doing. She said "sorry, sir," and ran away with Quiggle in pursuit. When Quiggle saw Tapia had stopped to take off the painter's overalls and mask, he took a photo to help the police apprehend her. Quiggle fractured his foot trying to jump over a wall while chasing Tapia.

The investigating officer recovered the overalls, the ventilator mask, and the crowbar where Tapia had left them. Quiggle and Ziegler discovered a broken window on the third floor, a cut in a first floor window screen, a cut in the third floor sliding glass door screen, and a tear in the plastic covering the master bedroom exterior door. The window appeared to be shattered by a blunt object, such as the crowbar. The broken window was boarded up and replaced for a total cost of $1,250.

A July 19, 2019 information charged Tapia with attempted first degree burglary (count 1; Pen. Code, § 664/459[1]), vandalism (count 2; § 594, subd. (a)), possession of burglary tools (count 3; §466), and first degree burglary with persons present (count 4; §§ 459, 667.5, subd. (c)(21)). It was further alleged as to counts 1, 2, and 4 that Tapia suffered two prior serious felonies under section 667, subdivision (a)(1) and suffered two prior strikes under the Three Strikes law.[2]

At trial, the People presented evidence of the incident as described above. Tapia testified in her own defense. She

---

[1]    All further section references are to the Penal Code unless otherwise specified.

[2]    There are minor discrepancies in the record regarding the total number of prior serious felonies suffered by Tapia. Those discrepancies do not affect our disposition or analysis.

explained she had been addicted to methamphetamine for the past 15 years. In 2013, she pleaded guilty to six counts of first degree burglary and was sentenced to five years in prison. When she was released on parole in 2017, she was homeless. On the night before the incident, Tapia stayed in a motel smoking methamphetamine with Joseph Navarro and Louis Lopez, whom she met through a friend in prison. Navarro told Tapia it was Lopez's birthday and they decided to go to the beach that morning to drink. Lopez drove and stopped at Home Depot. He claimed he needed to buy something for his mother. Navarro and Tapia waited outside for him and Tapia did not see what he purchased. In the car, Tapia continued to smoke methamphetamine and took four to five shots of tequila. She testified she was still coherent, however.

Navarro received a phone call when they arrived at Manhattan Beach and Lopez dropped him off. Lopez then parked the car near Quiggle and Ziegler's house. Lopez told Tapia he wanted to rob their house and he knew she could do it due to her prior convictions. Lopez told Tapia she had been smoking methamphetamine for free and now she needed to "make some money."

When Tapia refused, he hit her and choked her by pressing the crow bar against her throat. He held her by the hair while she put on the painter's overalls. Tapia walked to the side of the house as Lopez watched. She feared for her life and believed she could not outrun Lopez. She observed people in the home and decided to make a loud noise to alert them and create a diversion. She broke a window with the crowbar. When Quiggle came outside, Tapia apologized to him. She then ran away to escape Lopez.

4

Tapia explained, "I just didn't know what to do" "[b]ecause I'm on parole. I'm high. I'm under the influence." Tapia denied intending to steal anything. She also denied cutting a window screen or ripping plastic off the master bedroom door.

The jury found Tapia guilty on all counts. In a bifurcated proceeding, Tapia admitted the six prior convictions for first degree residential burglary alleged under the California Three Strikes law, as well as under section 667, subdivision (a), with one of the convictions occurring in 2007 and five of them occurring in 2013. The trial court sentenced Tapia to an indeterminate term of 25 years to life as a third strike, plus an additional five years for each of the two prior serious felony counts under section 667, subdivision (a).

Tapia timely appealed.

## DISCUSSION

### I. The Attempted Burglary Conviction

Tapia seeks reversal of her conviction for attempted burglary because it is a lesser included offense of burglary. According to Tapia, both charges arose from a single course of conduct. We agree.

"While section 654 prohibits multiple punishment, it is generally permissible to convict a defendant of multiple charges arising from a single act or course of conduct. [Citations.] However, a 'judicially created exception to this rule prohibits multiple convictions based on necessarily included offenses. [Citations.]' [Citation.] [¶] When a defendant is found guilty of both a greater and a necessarily lesser included offense arising out of the same act or course of conduct, and the evidence supports the verdict on the greater offense, that conviction is controlling, and the conviction of the lesser offense must be

5

reversed.  [Citations.]  If neither offense is necessarily included in the other, the defendant may be convicted of both, 'even though under section 654 he or she could not be punished for more than one offense arising from the single act or indivisible course of conduct.' [Citation.]" (*People v. Sanders* (2012) 55 Cal.4th 731, 736.)

Attempted burglary is a lesser included offense of burglary. (*People v. Michaels* (1961) 193 Cal.App.2d 194, 198.)  Accordingly, Tapia may be convicted of both attempted burglary and burglary of the Quiggle and Ziegler house only if the two crimes were not part of an indivisible course of conduct.

The Attorney General contends the evidence supports a finding that Tapia's attempted burglary and burglary were not part of the same course of conduct because the attempted burglary charge was based on the cut to the window screen on the first floor while the burglary charge was based on the broken window on the third floor.  Tapia could have left the area after she cut the first floor window screen but she engaged in a new course of conduct by moving the ladder to the scaffolding, climbing to the third floor, and breaking the window.

We are not persuaded.  The "multiple entries were 'committed pursuant to one intention, one general impulse, and one plan.' " (*People v. Montoya* (1994) 7 Cal.4th 1027, 1046, fn. 10.)  Unlike the cases cited by the Attorney General — *People v. Washington* (1996) 50 Cal.App.4th 568 and *In re William S.* (1989) 208 Cal.App.3d 313 — there was no time delay between one entry and the other because Tapia did not leave the property and later return.  The cutting of the screen on the first floor and the breaking of the window on the third floor occurred immediately after one another as part of a single course of

conduct with one intention. Accordingly, Tapia's conviction for attempted burglary must be reversed.

## II. Evidence of the Prior Convictions

Next, Tapia challenges the trial court's decision to admit her prior convictions at trial. She contends the record fails to affirmatively demonstrate the trial court weighed the probative value of the prior convictions with the risk of undue prejudice as required by Evidence Code section 352 (section 352). Additionally, Tapia asserts that the trial court abused its discretion when it declined to exclude the 2007 conviction as remote. Lastly, she contends the burglary convictions should have been sanitized. We conclude the record discloses the trial court was aware of and fulfilled its duties under section 352. We hold the trial court properly exercised its discretion in admitting the prior convictions.

### A. Proceedings Below

The People's theory of the prior convictions' admissibility rested on two grounds: (1) impeachment, and (2) evidence of prior bad acts under Evidence Code section 1101, subdivision (b).

Before trial commenced, the People filed a motion to impeach Tapia with her prior felony convictions for first degree residential burglary and grand theft of a firearm in 2007 and six counts of first degree residential burglary in 2013, if she chose to testify. During trial, defense counsel raised the issue of Tapia's potential testimony and requested the trial court either exclude the number of burglary convictions she suffered in 2013 or exclude the 2007 conviction because it was more distant in time. Defense counsel argued, "the introduction of so many convictions would be more prejudicial than probative, would be highly prejudicial since it's a similar type of charge. And the jury could

7

easily conclude that based on her history, her several [burglaries] on her record[,] that she committed this one as well."

The prosecutor retorted the prior convictions were also relevant to counter Tapia's defense that she acted under duress. Thus, according to the prosecutor, the prior convictions were admissible not only to impeach her credibility but also to show intent and absence of mistake to the jury. The trial court denied the request, finding that under the relevant legal authorities, "she could be impeached on any or all of those felonies."

### B. Legal Principles

Evidence of a prior felony conviction may be used for purposes of impeachment in any criminal proceeding. (Cal. Const., art. I, § 28, subd. (f); see also Evid. Code, § 788.) The California Supreme Court has limited the admissibility of prior convictions to those which necessarily involve moral turpitude. (*People v. Castro* (1985) 38 Cal.3d 301, 306 (*Castro*).) Burglary is a crime involving moral turpitude. (*People v. Edwards* (2013) 57 Cal.4th 658, 722.) " 'When determining whether to admit a prior conviction for impeachment purposes, the court should consider, among other factors, whether it reflects on the witness's honesty or veracity, whether it is near or remote in time, whether it is for the same or similar conduct as the charged offense, and what effect its admission would have on the defendant's decision to testify.' [Citation.]" (*Id.* at p. 722 [discussing factors articulated in *People v. Beagle* (1972) 6 Cal.3d 441, 453 (*Beagle*), abrogated on other grounds by *People v. Diaz* (2015) 60 Cal.4th 1176, 1190].) A court is not required to exclude a prior conviction because it is too similar to the current charge. (*People v. Tamborrino* (1989) 215 Cal.App.3d 575, 590.)

Additionally, evidence that a person committed a crime may be relevant to prove motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.  (Evid. Code, § 1101, subd. (b).)  "To satisfy this theory of relevance, charged and uncharged crimes need only be 'sufficiently similar to support the inference that the defendant " ' probably harbor[ed] the same intent in each instance.' [Citations.]" ' "  (*People v. Demetrulias* (2006) 39 Cal.4th 1, 15.)

Notwithstanding its admissibility for impeachment purposes or under Evidence Code section 1101, subdivision (b), a trial court retains the discretion to exclude evidence of a prior conviction under section 352.  (*People v. Wheeler* (1992) 4 Cal.4th 284, 296; *People v. Castro, supra,* 38 Cal.3d at p. 306; *People v. Clark* (2021) 62 Cal.App.5th 939, 957.)  That is, the trial court may "exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."  (§ 352.)  "Prejudice for purposes of Evidence Code section 352 means evidence that tends to evoke an emotional bias against the defendant with very little effect on issues, not evidence that is probative of a defendant's guilt." (*People v. Crew* (2003) 31 Cal.4th 822, 842.)

We review a trial court's decision to admit or exclude evidence of a prior conviction for an abuse of discretion.  (*People v. Hinton* (2006) 37 Cal.4th 839, 887; *People v. Green* (1995) 34 Cal.App.4th 165, 183 (*Green*).)

## C. The Trial Court Was Aware of Its Duty Under Section 352

We first address whether the trial court failed to fulfill its duties under section 352. The People contend Tapia has forfeited the issue because defense counsel failed to request that the trial court expressly weigh the relevant factors under section 352 when it indicated it was "inclined" to admit the evidence. The People have failed to present any authority that requires a defendant to make such a request or risk forfeiture; *People v. Townsel* (2016) 63 Cal.4th 25, 66, cited by the People, merely holds that a failure to object on a specific ground forfeits that specific challenge on appeal. There was no forfeiture.

It is well established that a " 'trial judge need not expressly weigh prejudice against probative value—or even expressly state that he has done so.' " (*People v. Brooks* (2017) 3 Cal.5th 1, 40.) Instead, the record must demonstrate the trial court understood and fulfilled its responsibilities under section 352. (*People v. Lucas* (1995) 12 Cal.4th 415, 449.)

Here, the court heard argument regarding the probative value of the evidence as well as its potential for prejudice. Specifically, defense counsel argued "the introduction of so many convictions would be more prejudicial than probative, would be highly prejudicial since it's a similar type of charge." He also asserted the 2007 conviction was less probative because it was remote in time. The prosecutor then argued the evidence was admissible not only for impeachment purposes, as stated in its motion in limine filed prior to trial, but it was probative to counter Tapia's duress defense. The discussion, although short, covered at least three of the "guideline" factors identified in *Beagle*: the crime's relevance to the trait of untruthfulness (its

10

impeachment value); the closeness or remoteness in time of the conviction to the crime charged; and the similarity of the offenses. (See *People v. Beagle, supra*, 6 Cal.3d at p. 453.)  Given the parties' arguments, which the trial court considered, we are convinced the trial court understood its discretion under section 352 to exclude the evidence.  The record shows the trial court " 'understood and fulfilled its responsibilities under . . . section 352.  Nothing more was required.' [Citation.]"  (*People v. Lucas*, *supra,* 12 Cal.4th at p. 449.)

### D.  Remoteness and Failure to Sanitize

Tapia acknowledges the prior convictions "may have been relevant" both to impeach her and to demonstrate her intent or lack of mistake under Evidence Code section 1101, subdivision (b).  However, she contends the 2007 conviction was nevertheless subject to exclusion under section 352 because it was remote in time.  She also contends all of the convictions were required to be sanitized.  We disagree.

### 1.  The 2007 Conviction

"Remoteness for purposes of [Evidence Code] section[s] 352 and 1101, subdivision (b) is measured differently than remoteness for purposes of impeachment.  For the latter, the question often turns on whether the person has led a blameless life, demonstrating that the person no longer has the propensity to lie generally imputed to convicted felons.  [Citation.]  For the former, the question is whether the prior conduct is so old that it is not reasonable to conclude it speaks to a person's current mental state.  [Citations.]"  (*People v. Williams* (2018) 23 Cal.App.5th 396, 422, fn. 9.)  Generally, both questions relate to whether the passage of time has diminished the current

11

probative value of the prior conviction or the alleged prior bad act.

If a defendant continues to engage in criminal conduct despite the passage of time, decisional law has routinely found no error even if the prior conviction may have occurred a decade or more ago. In *Green, supra,* 34 Cal.App.4th at page 183, the trial court admitted a 20-year-old prior conviction because the defendant's 1973 conviction was followed by five additional convictions in 1978, 1985, 1987, 1988, and 1989. In finding no error, the court of appeal reasoned that " 'the systematic occurrence of [appellant's] priors over a 20-year period create[d] a pattern that [was] relevant to [his] credibility.' " (*Ibid*.)

Similarly, Tapia has not led a legally blameless life since 2007, as she suffered six convictions in 2013. Tapia also admitted she was on parole for the 2013 convictions at the time of her arrest for the current crimes. Based on her criminal history from 2007 to the time of committing the instant charges in 2018, the prior convictions were relevant for both impeachment and as evidence of prior bad acts to counter her testimony that she committed the offenses under duress. As such, the 2007 conviction was not remote.

Even if the 2007 conviction was less probative of Tapia's intent due to its age, its admission was harmless given Tapia's six other convictions in 2013. It is not reasonably probable she would have obtained a better result absent the error. (*People v. Watson* (1956) 46 Cal.2d 818, 836.)

### 2. Sanitizing the Prior Convictions

Tapia contends the trial court should have sanitized her prior convictions by allowing the prosecutor to refer only to a generalized descriptor of the crime (e.g., theft-related offenses)

12

because her prior convictions were also for burglary. Tapia has forfeited this issue. (*Green, supra*, 34 Cal.App.4th at p. 182, fn. 9.) At trial, Tapia did not request the prior convictions be sanitized. She merely requested the trial court either exclude the 2007 conviction or exclude the number of 2013 convictions.

In any event, as we have discussed, the burglary convictions were admissible under Evidence Code section 1101, subdivision (b) on the issue of intent. Sanitizing them as "theft-related offenses" would reduce or eliminate their probative value because the charged crimes and the prior crime would no longer demonstrate " 'the recurrence of a similar result . . . [that] tends to establish (provisionally, at least, though not certainly) the presence of the normal, i.e., criminal, intent accompanying such an act. . . .' [Citation.]" (*People v. Ewoldt* (1994) 7 Cal.4th at p. 402.) In this context, it is the similarity of the acts that gives the evidence its probative value – here the prior commission of residential burglaries.

## III. Admission of the Prior Convictions Was Not Voluntary and Intelligent

Tapia admitted she suffered six prior convictions for residential burglary in a post-trial hearing. She contends her admission was not voluntary and intelligent because she was not told of, and thus did not expressly waive, her rights to remain silent and to confront adverse witnesses. We agree.

### A. Proceedings Below

The trial on Tapia's prior convictions was bifurcated from the trial on the charged offenses. Immediately following the verdict, defense counsel waived Tapia's right to a jury trial on the prior convictions on her behalf. On February 3, 2020, approximately three-and-a-half months after she was found

13

guilty by the jury on October 23, 2019, the parties reconvened for a post-trial hearing.  The prosecutor took Tapia's waivers and admission of her prior convictions as follows:

"[Prosecutor]: Ms. Tapia, in case number YA099077, you have the right to a court trial on your priors. Do you waive and give up that right and admit that on December 17th, 2007, you were convicted of one count of first degree residential burglary in violation of [Penal] [C]ode section 459 in case NA076088?

"The Defendant: Yes.

"[Prosecutor]: And do you also admit that on September 19th, 2013, you were convicted of five counts of first degree residential burglary in violation of Penal code section 459 in case number NA094785?

"The Defendant: Yes.

"[Prosecutor]: Counsel, do you join?

"[Defense Counsel]: Yes.

"[Prosecutor]: People join as well.

"The Court: Thank you. The record will reflect that the defendant has admitted [the] prior two convictions, two counts of burglary."

The matter was then continued to a later date for probation and sentencing.

### B. Legal Principles

"[B]efore accepting a criminal defendant's admission of a prior conviction, the trial court must advise the defendant and obtain waivers of (1) the right to a trial to determine the fact of the prior conviction, (2) the right to remain silent, and (3) the right to confront adverse witnesses.  [Citation.]  Proper advisement and waivers of these rights in the record establish a defendant's voluntary and intelligent admission of the prior

14

conviction. [Citations.]" (*People v. Mosby* (2004) 33 Cal.4th 353, 356 (*Mosby*); see *People v. Cross* (2015) 61 Cal.4th 164, 170 (*Cross*) [discussing *Boykin–Tahl* requirement that the trial court ensure a guilty plea is knowing and voluntary]; *Boykin v. Alabama* (1969) 395 U.S. 238; *In re Tahl* (1969) 1 Cal.3d 122.)

Failure to provide express advisement and to obtain waivers are no longer subject to automatic reversal. (*Mosby, supra,* 33 Cal.4th at p. 360.) "[I]f the transcript does not reveal complete advisements and waivers, the reviewing court must examine the record of 'the entire proceeding' to assess whether the defendant's admission of the prior conviction was intelligent and voluntary in light of the totality of circumstances. [Citation.]" (*Mosby, supra*, 33 Cal.4th at p. 361.)

In *Mosby, supra*, 33 Cal.4th at page 364, the defendant was told he had a right to a jury trial on a prior conviction allegation and, after waiving that right, admitted the truth of the allegation "immediately after a jury found him guilty of selling cocaine." The court found the defendant's admission of his prior conviction was voluntarily and intelligently made under the totality of the circumstances, despite the trial court's failure to expressly advise the defendant and obtain an express waiver of his right to confrontation and his right to be free from compulsory self-incrimination. (*Ibid.*)

It reasoned because the defendant entered his admission after he had "*just* undergone a jury trial at which he did not testify" but his codefendant did, the defendant "not only would have known of, but had just exercised, his right to remain silent at trial, forcing the prosecution to prove he had sold cocaine. And, because he had, through counsel, confronted witnesses at that immediately concluded trial, he would have understood that

15

at a trial he had the right of confrontation." (*Mosby, supra*, 33 Cal.4th at p. 364.) The court also observed the defendant's prior conviction was the result of a guilty plea and he would have been advised of his *Boykin–Tahl* rights in the earlier case. (*Mosby*, at p. 365.) Further, the court noted that unlike the trial that the defendant had just undergone, "trial on a prior conviction is 'simple and straightforward,' often involving only a presentation by the prosecution 'of a certified copy of the prior conviction along with defendant's photograph [or] fingerprints' and no defense evidence at all." (*Id.* at p. 364.)

In *People v. Lloyd* (2015) 236 Cal.App.4th 49, 59–60 (*Lloyd*), the court found the defendant's admission of his five prior convictions was not voluntary and intelligent because it was not made until seven months after his trial. "In the interim, [the] defendant's trial counsel declared a conflict of interest and was relieved as counsel of record, new counsel was appointed to represent [the] defendant, and the matter was continued a number of times for trial on the state prison priors and sentencing." (*Id.* at p. 59.) Further, the appellate record did not include information regarding whether the prior convictions were a result of a guilty plea or a trial. The court concluded, "On this record, defendant's experience in the criminal justice system does not permit a reasonable inference he was aware of and intended to waive his right to silence and confrontation by admitting the state prison priors." (*Id.* at p. 60.)

**C. Analysis**

Our facts are closer to *Lloyd* than to *Mosby*. We conclude Tapia's admission of her prior convictions was not intelligent and voluntary in light of the totality of circumstances. Here, there is no dispute Tapia was informed of her right to a trial and waived

16

that through her counsel. She was not expressly informed of her right to remain silent or of her right to confrontation.

As in *Lloyd,* Tapia had not "just" undergone a trial where her counsel confronted witnesses through cross-examination. Instead, over three months had elapsed between the time of trial and her admission. Moreover, unlike the defendant in *Mosby* who exercised the right to remain silent by not testifying, Tapia testified at trial. Accordingly, we may not infer, as the *Mosby* court did, that Tapia would have known of her right to remain silent at trial. Given these circumstances, a reasonable inference may not be drawn that Tapia was aware of and intended to waive her rights to silence and confrontation when she admitted the prior convictions.[3] As a result, Tapia's admission of her prior convictions was not intelligent and voluntary.

---

[3]     We observe Tapia was also not advised of the penal consequences of her admission as required by the Supreme Court in *In re Yurko* (1974) 10 Cal.3d 857 (*Yurko*), which extended *Boykin–Tahl* advisements to when a criminal defendant admits a prior conviction allegation that subjects him or her to increased punishment. In *Yurko,* the high court unanimously held that "henceforth an accused must be advised of (1) specific constitutional protections waived by an admission of the truth of an allegation of prior felony convictions, and (2) those penalties and other sanctions imposed as a consequence of a finding of the truth of the allegation." (*Id.* at p. 860; *People v. Cross, supra,* 61 Cal.4th at pp. 170–171.) As a result of this "judicially created rule of criminal procedure[,]" the trial court must advise the defendant "of the precise increase in the prison term that might be imposed, the effect on parole eligibility, and the possibility of being adjudged a habitual criminal." (*Cross, supra*, at pp. 171, 179, citing *Yurko, supra,* 10 Cal.3d at pp. 863–864.)

## IV.    The Remaining Contentions are Moot

Our determination that Tapia's prior conviction admissions were involuntary because the admonition was deficient requires that the judgment imposed be vacated, the case remanded to either conduct a priors trial, or, to take new waivers, and to conduct re-sentencing.  As such, the remaining contentions Tapia raised (abuse of discretion for not striking a prior conviction allegation pursuant to Romero/judgment imposed was cruel and unusual punishment under the California Constitution/various sentencing issues) are rendered moot.

## DISPOSITION

The conviction for attempted burglary (count 1) is reversed.  The true finding on the allegations that Tapia suffered two prior convictions is reversed and the judgment imposed is vacated.  The matter is remanded for further proceedings on the prior conviction allegations and resentencing.  Upon resentencing, the trial court is instructed to prepare an amended abstract of judgment and to transmit it to the Department of Rehabilitation and Corrections.  The judgment is otherwise affirmed.


OHTA, J.*


We concur:

---

*        Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

18

STRATTON, Acting P. J.        WILEY, J.