Filed 4/28/22  P. v. Pace CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D078402 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCD282322) |
| CHRISTIE CHAVON PACE, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Kenneth K. So, Judge.  Affirmed.

Heather L. Beugen, under appointment by the Court of Appeal for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland and Marvin E. Mizell, Deputy Attorneys General for Plaintiff and Respondent.

During what started as a fist-fight with her boyfriend's adult daughter (Daughter) and 17-year-old son (Son), Christie Chavon Pace grabbed a boxcutter and used it to sever tendons in Daughter's wrist and slice Son's

arm to the bone. Testifying that she acted in self-defense, Pace was impeached with prior felony convictions for (1) felon in possession of a firearm; (2) assault with a deadly weapon; and (3) assault likely to cause great bodily injury. The jury convicted her of mayhem and assault with a deadly weapon. She was sentenced to 17 years in prison.

On appeal, Pace contends the trial court abused its discretion by denying her pretrial motion to sanitize the evidence by referring to the convictions as crimes of "moral turpitude." She also contends the mayhem convictions should be reversed because the court did not sua sponte instruct on battery with serious bodily injury as a lesser included offense.

As to Pace's first contention, numerous cases have permitted impeachment with prior convictions that are identical to the charged offense, and courts are not required to sanitize such evidence. (See *People v. Little* (2012) 206 Cal.App.4th 1364, 1379 (*Little*).) As to the second, in a case Pace does not cite—*People v. Poisson* (2016) 246 Cal.App.4th 121, 125 (*Poisson*)— this court held that "battery with serious bodily injury is not a lesser included offense of mayhem." Accordingly, we reject her claims and affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

Pace along with her boyfriend, Michael, and his two children lived in Michael's home. The family dynamics were problematic. Pace and Michael had a "volatile" relationship punctuated by verbal and physical fights. There was "bad blood" between Pace and Daughter, which in the past had boiled over into fist-fights. Son and Pace traded harsh words.

In May 2019, Pace was angry with Michael and expressed her discontent by hurling rocks at the house, breaking a window. Two days later, Son and Daughter were home when they again heard rocks hitting the house.

2

When Son went outside to investigate, Pace threw a rock landing just a few feet away from him.  Angrily, he told Pace to leave.  She replied, calling him a "bitch[ ]" and a "hoe[ ]."

By this time Daughter was "enraged" and went outside yelling at Pace.  Pace got in her car and drove away, but after just a short distance she backed-up and returned near to where Daughter was standing.  Pace threw the first punch through the open window, hitting Daughter in the chest.  A melee ensued.  Daughter, unarmed and wearing pajamas, punched Pace in the jaw.  After the two women exchanged seven or eight punches, Daughter saw a boxcutter in Pace's hand.

Meanwhile, as the women were fighting, Son tried to open the car door to put a "wedge" between them.  But Pace punched him as he reached into the car.  He returned the blows, punching Pace's jaw, chest, and arm.

Out came the boxcutter.  Daughter retreated when her left hand was "dangling" from severed tendons.  Pace then used the blade to slice Son's shoulder and arm.  According to a first responder, his arm "looked like it was barely hanging on."

Pace testified in her own defense.  She claimed she was afraid of Son because he has "martial arts training," and of Daughter because in two previous fist-fights Daughter "punched" her in the mouth and head.  According to Pace, who admitted the rock throwing, she drove away and stopped so she could call Michael on her cell phone.  But before she could place the call, Daughter hit her on the head and began pulling her out of the car by her clothes and hair.

Pace admitted using the boxcutter, but explained it was in her car because she was on the way to her job, where she unpacks food for a commercial pantry.  She maintained that she stabbed Son because she was

3

"getting jumped at this point" and was "afraid" and "terrified" of being beaten and dragged out of her car.

The jury found Pace guilty of mayhem (Pen. Code, § 203) as to both Son and Daughter, and as to each made true findings on weapon and bodily injury enhancements. Pace was also convicted of assault with a deadly weapon as to Son, again with true findings on weapon and great bodily injury enhancements. The jury hung on the assault count as to Daughter, which the court later dismissed at the People's request.

## DISCUSSION

A. *The Court Did Not Abuse Its Discretion In Allowing Pace to Be Impeached With Her Prior Felony Convictions.*

### 1. *Additional Procedural Background*

Before trial, defense counsel moved to exclude evidence of Pace's prior felony convictions, specifically:

1. Assault with a deadly weapon (2002);

2. Possession of firearm and ammunition by a felon (2007);

3. Assault by force likely to produce great bodily injury (2014); and

4. Assault by force likely to produce great bodily injury (2016).

Citing Evidence Code[1] section 352, counsel asserted, "you have the exact same crime that's been committed in the past and the exact same crime that's being charged" and "it's hard to ask a jury to be fair and use this evidence properly when they're hearing more about what she did in the past than what she did here."

---

[1] Undesignated statutory references are to the Evidence Code.

4

Stating he had weighed and balanced the evidence "under [section] 352," the judge ruled that if she testified, Pace could be impeached with the 2014 and 2016 assault convictions, and deferred ruling on the 2007 weapon conviction. The court was "willing to listen to argument" about sanitizing the evidence, but explained, "it's very difficult to sanitize these kinds of convictions without having the jury speculate as to what those crimes actually were. It could be worse in many respects."[2]

Before the first witness testified, defense counsel renewed her request to sanitize the prior conviction evidence. Counsel acknowledged that "calling them crimes of moral turpitude sounds creepy," but nevertheless asked the court to do so because the convictions were "so close in verbiage to the charged crimes." The court denied the request, stating: "[W]hen you talk about moral turpitude, then [jurors] ask what it is. And if you give them the definition of [']inclination to do evil,['] I'm not sure that's necessarily helpful for a defendant either" because "they could think it's a murder conviction, and I've had lawyers express that specifically."

On direct examination, Pace admitted having a 2007 conviction for "illegally possessing a firearm as a felon," and "two prior felony assault convictions." On cross-examination, she clarified that the 2016 conviction was for "assault likely to cause great bodily injury." In closing argument, the prosecutor told the jury, "You've heard she's been convicted of felonies. You can use that in judging her credibility."

2.  *The Court Did Not Abuse Its Discretion*

Under the California Constitution, "Any prior felony conviction of any person in any criminal proceeding . . . shall subsequently be used without

---

2     At the next hearing, the court determined the 2007 conviction was also for a crime of moral turpitude and, therefore, admissible.

limitation for purposes of impeachment . . . in any criminal proceeding." (Cal. Const., art. I, § 28, subd. (f)(4).)  This provision " ' "authorizes the use of any felony conviction which necessarily involves moral turpitude, even if the immoral trait is one other than dishonesty." ' " (*People v. Edwards* (2013) 57 Cal.4th 658, 723–724.)  Moral turpitude refers to a general " 'readiness to do evil' " (*People v. Castro* (1985) 38 Cal.3d 301, 315 (*Castro*)), and includes " 'conduct involving violence, menace, or threat.' " (*People v. Williams* (1999) 72 Cal.App.4th 1460, 1464.)

Admission of a prior felony conviction for impeachment purposes is subject to the trial court's exercise of discretion under section 352.  The court should consider several factors, including:  "(1) whether the prior conviction reflects on honesty and integrity; (2) whether it is near or remote in time; [and] (3) whether it was suffered for the same or substantially similar conduct for which the witness-accused is on trial . . . ."  (*Castro*, *supra*, 38 Cal.3d at p. 307.)

Of course, evidence of prior criminal acts is usually inadmissible to show a defendant's disposition to commit crime.  (§ 1101, subd. (a).)  But a defendant's past conduct may tend to show present untruthfulness—that is, a defendant's earlier disregard for the law may suggest he or she "is of bad character and unworthy" of belief.  (*Castro*, *supra*, 38 Cal.3d at p. 314, italics omitted.)  Thus, the appropriate use of prior criminal acts evidence depends upon a subtle but critical distinction.  The jury may infer from such evidence that the defendant has a bad character and is therefore not a credible witness, but not that the defendant has a bad character and therefore committed the crime charged.

Pace's fundamental argument is that under the circumstances of this case—where the prior felony convictions include aggravated assault and the

6

charges also involve assaultive conduct—asking a jury to use the evidence to show a disposition to be untruthful but *not* a disposition to commit the charged crimes is unrealistic. She claims that because the convictions were so similar to the charged offenses, the jury would inevitably use the evidence to show a propensity for committing assault, and therefore infer that she committed the charged offenses.

Pace's concerns are not unreasonable ones, especially given that the prior convictions in this case involve violence, not dishonesty. Human nature is slow to change, and just 40 years ago our Supreme Court stated, " 'only the most disciplined minds would be able to restrict their use of the prior felony evidence to assessing the defendant's credibility as a witness and disregard its obvious implications with respect to his tendencies in the area of unlawful conduct.' " (*People v. Barrick* (1982) 33 Cal.3d 115, 125 (*Barrick*).)

But we are now dealing not only with a *constitutional* mandate that allows for such impeachment, but one worded in the broadest terms. Under the state constitution, "any" prior conviction "shall" be used "without limitation for purposes of impeachment." (Cal. Const. art. I, § 28, subd. (f)(4).) And in light of that, the Supreme Court has held that even a prior conviction for a violent crime has "some 'tendency in reason' [citation] to shake one's confidence" in one's veracity. (*Castro, supra,* 38 Cal.3d at p. 315.) Likewise, "Although the similarity between the prior convictions and the charged offenses is a factor for the court to consider when balancing probative value against prejudice, it is not dispositive." (*People v. Clark* (2011) 52 Cal.4th 856, 932 (*Clark*) [robbery prior admissible in prosecution that included robbery].)

In numerous cases, appellate courts have held that similarity between past convictions and current charges does not require exclusion. These

7

include *People v. Gutierrez* (2002) 28 Cal.4th 1083, 1138–1139 (prior conviction for assault with a deadly weapon on a peace officer was admissible in prosecution for attempted murder of a police officer); *People v. Johnson* (1991) 233 Cal.App.3d 425, 459 (prior murder conviction in murder prosecution); *People v. Green* (1995) 34 Cal.App.4th 165, 182–183 (*Green*) (prior auto theft convictions in prosecution for auto theft); *People v. Muldrow* (1988) 202 Cal.App.3d 636, 647 (defendant impeached with six prior convictions, three of which were identical to a charged offense); *People v. Lewis* (1987) 191 Cal.App.3d 1288, 1297–1298 (rape charges—defendant impeached with prior rape convictions).

As the reviewing court, we must uphold the trial court's exercise of discretion as to an identical offense unless the court " 'exceeds the bounds of reason.' " (*Green, supra,* 34 Cal.App.4th at pp. 182–183.) "Because the court's discretion to admit or exclude impeachment evidence 'is as broad as necessary to deal with the great variety of factual situations in which the issue arises' [citation], a reviewing court ordinarily will uphold the trial court's exercise of discretion." (*Clark*, *supra*, 52 Cal.4th at p. 932.)

In this case, the trial court's ruling was within the bounds of discretion. The court carefully listened to defense counsel's arguments and stated on the record it had weighed and balanced the factors under section 352. Moreover, to mitigate potential undue prejudice, the court allowed the prosecutor to elicit only the title of the offense and date of conviction. The court also instructed the jury with CALCRIM No. 316—that it could consider prior felony convictions only in evaluating Pace's credibility. Pace points to nothing that would suggest the jury failed to comprehend and accept this instruction. Accordingly, " 'Any prejudice that the challenged information may have threatened must be deemed to have been prevented by the court's

8

limiting instruction to the jury. We presume that jurors comprehend and accept the court's directions.' " (*People v. Gutierrez* (2018) 28 Cal.App.5th 85, 91.)

Neither did the trial court abuse its discretion in declining to sanitize the evidence by requiring the prosecution to refer to the convictions as crimes of "moral turpitude." The problem is the jury would almost inevitably ask for a definition of moral turpitude, or perhaps simply speculate about what such crimes might be. (See *Barrick*, *supra*, 33 Cal.3d at pp. 124–125.) Drawing on his experience, the judge here expressed these concerns stating, "The difficulty for sanitization that I've encountered is when you talk about moral turpitude, then [jurors] ask what it is. And if you give them the definition of [']inclination to do evil,['] I'm not sure that's necessarily helpful for a defendant either."

The court reasonably determined that sanitizing the evidence in the manner Pace requested would remove one risk of prejudice only to create another one. As an appellate court noted in similar circumstances, "Murder and torture are crimes of moral turpitude. It might be far safer to tell the jury what the crime was than to let the jury speculate." (*Little*, *supra*, 206 Cal.App.4th at p. 1379 [trial court's failure to sanitize a prior theft-related conviction by describing it as crime of moral turpitude was not error].) Although a different judge might have reached a different conclusion, we cannot conclude the trial court here abused its discretion.

B.  *The Court Was Not Required to Instruct on Battery With Serious Bodily Injury*

Citing *People v. Ausbie* (2004) 123 Cal.App.4th 855 (*Ausbie*), Pace contends that the court prejudicially erred by failing, sua sponte, to instruct on battery with serious bodily injury as a lesser included offense of mayhem. Penal Code section 203 defines simple mayhem: "Every person who

9

unlawfully and maliciously deprives a human being of a member of his body, or disables, disfigures, or renders it useless, or cuts or disables the tongue, or puts out an eye, or slits the nose, ear, or lip, is guilty of mayhem." For purposes of battery, Penal Code section 243, subdivision (f)(4) defines serious bodily injury as "a serious impairment of physical condition, including, but not limited to, the following: loss of consciousness; concussion; bone fracture; protracted loss or impairment of function of any bodily member or organ; a wound requiring extensive suturing; and serious disfigurement."

While mayhem often involves serious bodily injury, the Supreme Court has concluded that it does not *require* serious bodily injury. (*People v. Santana* (2013) 56 Cal.4th 999, 1010 (*Santana*).) For example, a defendant commits mayhem if he slits his victim's nose, ear, or lip—but those injuries do not necessarily result in "protracted loss or impairment of function, require extensive suturing, or amount to serious disfigurement." (*Ibid.*) Nor do they necessarily (or even commonly) result in loss of consciousness, concussion, or bone fracture. (Pen. Code, § 243, subd. (f)(4).)

Thus, this court in *Poisson* concluded that under *Santana*, battery with serious bodily injury is not a lesser-included offense of simple mayhem. (*Poisson*, *supra*, 246 Cal.App.4th at pp. 124–125.) In so holding, we distinguished the case Pace relies on *Ausbie* on the grounds that it preceded the Supreme Court's opinion in *Santana*, which "explicitly disapproved" it. (*Poisson*, at p. 125.) "Because *Santana* makes clear that serious bodily injury is not an element required to be proven for the crime of simple mayhem, the offense of battery with serious bodily injury is not a lesser included offense of mayhem. There was no error below." (*Poisson*, at p. 125.)

## DISPOSITION

The judgment is affirmed.

DATO, J.

WE CONCUR:

McCONNELL, P. J.

IRION, J.

11